FORD, *Appellant*, v. GEBHARDT *et al.*

Division One, February 27, 1893.

1. **Equity**: SPECIFIC PERFORMANCE. An actually concluded contract must be shown by one asking a decree for specific performance of a contract to sell land.

2. ———: ———. The evidence in this case examined and *held* not to show a completed contract.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*Silas B. Jones* for appellant.

(1) *First.* A contract results from a proposal and acceptance. The acceptance in such case must be unequivocal, unconditional and without variance of any sort between it and the proposal; otherwise there is no mutual assent of the parties to the same thing, and hence no contract. A contract can only result when the offer made is met by an acceptance which corresponds with the offer in every particular. *Bruner v. Wheaton*, 46 Mo. 363; *Robinson v. Railroad*, 75 Mo. 494; *Mfg. Co. v. Broderick*, 12 Mo. App. 378;

*Stotesburg v. Massengale*, 13 Mo. App. 22; *Cangas v. Mfg Co.*, 37 Mo. App. 297.   *Second.* A response to a proposal which does not *per se* in law amount to an acceptance of the proposal, is a rejection of the proposal; and itself becomes an offer and requires acceptance before a contract springs up bween the parties.   Authorities *supra.*   *Third.* The acceptance of a proposal to be in itself effectual to bring about a contract must be made in a reasonable time after receipt of the proposal; otherwise it becomes a new proposition requiring assent.   *Robinson v. Railroad*, 75 Mo. 494; *Bruner v. Wheaton*, 46 Mo. 363 *Cangas v. Mfg Co.*, 37 Mo. App. 297; *Maclay v. Harvey*, 90 Ill., 525; 1 Parsons on Contracts [7 Ed.] * 480, *et seq*; 1 Wharton on Contracts, sec. 9, *et seq.*   *Fourth.* The mere lapse of a reasonable time within which to accept a proposal operates *per se* as a withdrawal of the proposal.   Bishop on Contracts, sec. 327.   *Fifth.* What is a reasonable time must be determined from the circumstances of the case, including the subject-matter of negotiation and the nature of the business, the ultimate object being to ascertain the purpose of the parties.   1 Parsons on Contracts, *483; Wharton on Contracts, sec. 9.   (2) When a party makes a representation of fact to another person, intending that he shall act thereon, and knowing that such other person intends to act thereon, and the latter does act upon such representation, then the party making the representation is estopped from afterwards calling in question the truth of the representation; and in such case it is immaterial that the party when he made the representation did not know whether it was true or false.   He should not have affirmed that to be true which he did not know to be true.   If a person actively encourages another to buy land, he cannot, after the land is purchased under such encouragement, assert any title in himself, although he may have been ignorant of

his rights when he gave the encouragement. Bigelow on Estoppel [5 Ed.] p. 610, 639; *Rice v. Bunce*, 49 Mo. 231; *Bales v. Perry*, 51 Mo. 449; *Sweaney v. Mallory*, 62 Mo. 485; *Austin v. Loring*, 63 Mo. 19; *Soward v. Johnston*, 65 Mo. 102; *Melton v. Smith*, 65 Mo. 324; *Hart v. Giles*, 67 Mo. 175; *Acton v. Dooley*, 6 Mo. App. 323; *Guffey v. O'Reiley*, 88 Mo. 418.

*Charles L. Moss* for respondents.

(1) When parties conduct a negotiation through the mails, a contract is completed the moment a letter accepting the offer is mailed. 2 Kent's Commentaries [13 Ed.] sec. 477, p. 685; 1 Parsons on Contracts [7 Ed.] sec. 484, p. 515; *Kempner v. Cohn*, 47 Ark. 519; *Abbott v. Shepherd*, 48 N. H. 14; *Stockham v. Stockham*, 32 Md. 196; *Hallock v. Ins. Co.*, 26 N. J. 269. And this is true, even when the acceptance is delayed through irregularities or accidents in the mails. *Adams v. Lindsell*, 1 B. & Ald. 681; *Dunlap v. Higgins*, 1 H. L. Cases, 381. (2) Unless the time is limited, a proposition is open until it is accepted or rejected. 2 Kent's Commentaries [13 Ed.] sec. 477, p. 685; 1 Wharton on Contracts, sec. 9, p. 24; *Mactier v. Frith*, 6 Wend. 103; *Kempner v. Cohn*, 47 Ark. 519. And if accepted within a time satisfactory to the proposer, the contract is complete. 1 Parsons on Contracts [7 Ed.] sec. 481. (3) Specific performance will not be granted as against one who acted under surprise or mistake, or who was taken unawares, or acted under confused or mistaken impressions. When one acts under a mistake as to his actual rights, he cannot justly be said to have intended what he did. 1 Story's Equity Jurisprudence [13 Ed.] secs. 123, 140, 161; *Willan v. Willan*, 16 Ves. 72; *Anderson v. Smith*, 1 A. K. Marsh. 51; Fry on Specific Performance [3 Am. Ed.] sec. 722.

Now, will this remedy be granted, when there appears not to have been a full, entire and intelligent consent to the contract? Fry on Specific Performance [3 Am. Ed.] sec. 381. (4) An estoppel cannot be claimed against one who contracted through mistake or in ignorance of established rights. Bigelow on Estoppel [5 Ed.] p. 617; *Acton v. Dooley*, 74 Mo. 63; *Smith v. Hutchinson*, 61 Mo. 83; *Clinton v..Haddam*, 50 Conn. 84; *Brewer v. Railroad*, 5 Met. 478; *Thrall v. Lathrop*, 30 Vt. 307; *Wright v. Newton*, 130 Mass. 552; *Buck v. Milford*, 90 Ind. 291. There must be affirmative evidence of fraudulent conduct. *Hill v. Epley*, 31 Pa. St. 335; *City v. Schulenburg*, 98 Mo. 617; *Blodgett v. Pevey*, 97 Mo. 273. The defendant must be apprised of his rights at the time, or there can be no estoppel. *Burke v. Adams*, 80 Mo. 514.

BRACE, J.,—This is an action to enforce the performance of an alleged contract for the sale of two vacant lots in the city of St. Louis. The trial court upon the hearing dismissed the bill and rendered judgment for the defendants, from which the plaintiff appeals.

The evidence tends to prove that the defendant, Charles E. Gebhardt, was at one time the owner of the lots; that he is a photographer, living and doing business in Memphis, Tennessee; that in the same city resided Dr. Pool, who also owned some lots in the same block; that the plaintiff, who is an attorney in the city of St. Louis, was employed by Gebhardt and Pool to perfect their title to said lots. In doing so he became the purchaser of them at a tax sale, and took a tax deed to the lots in his own name, the title to be held in trust for the benefit of his clients; that their title was supposed by them to be defective in some respects. For his services in clearing the title, to all

the lots Dr. Pool seems to have paid him, by conveying to him one of his (Pool's) lots.   It seems at this time the defendant Gebhardt was indebted on account to his co-defendant Somerville, who was a dealer in photographer's supplies in the city of St. Louis, and that Gebhardt directed Ford to convey his two lots to Somerville, who at the time was absent from the city, which he accordingly did; and that afterwards, through Ford's agency, a quitclaim deed from another party to Somerville was obtained; that Somerville held the title thus conveyed to him with the intention on some sort of understanding that when the lots were sold, Gebhardt was to have whatever the excess of the proceeds of such sale might be after his indebtedness was paid.

In this situation of affairs, on the ninth of June, 1890, Somerville wrote from St. Louis to Gebhardt at Memphis, Tennessee, a letter containing a statement of Gebhardt's indebtedness to him, amounting in all to $645.95, and proposing to settle the same and take the property at $8 per foot, and to send him a draft on New York for the difference amounting to $154.05. On the next day, the tenth, Somerville wrote Gebhardt another letter in which he says: "In writing you last evening I overlooked the charge for investigating title, etc. If I remember right, the same was $20, which should be deducted from our offer, etc." On the seventeenth of June plaintiff called on Somerville in regard to Gebhardt's lot, and next day (the eighteenth) wrote Dr. Pool at Memphis a letter in which he says: "Mr. Somerville told me that he held these lots as security for a debt from Gebhardt. * * * Suppose you ask Gebhardt if he wants to sell at $9 a foot, and if so, perhaps I might take those two lots also. * * * Somerville wants to get his money and I suppose you do also, that is, the amount due you on account of Gebhardt's

share of my fee, and this might be a way of paying Gebhardt's debts, and leaving him a surplus. I do not know ·just how much Somerville's claim is. If Gebhardt wants to sell now please let me know. * * * If Gebhardt wants to sell let him make me an offer in writing."

On the same day (the eighteenth) Gebhardt wrote a letter to Somerville in answer to his letters of the ninth and tenth, in which Gebhardt says: "I received both your favors in regard to the lots. Of course I have to abide by your agreement with Ford, but they were only entitled to one third of the price that I get, and selling at $8 would only entitle him to $133. I would have answered sooner but thought I could arrange to hold on to the lots, but business is so dull that I can't get any money together neither can I collect what is due me. I think and suppose you will see it in that light. As you buy the lots yourself you ought not to charge me with the abstract as naturally a man buying property is going to look up the title. * * * I need the money by Saturday, the twenty-first, and you will oblige me if you attend to this immediately and send me draft. If anything has happened that will prevent sending the money, telegraph me immediately so I can make arrangements here yet. Please don't disappoint me." This letter was put in the postoffice at Memphis on the eighteenth of June and mailed that evening at six P. M. from that office. The next morning Dr. Pool called on Gebhardt and showed him the plaintiff's, Ford's, letter, and as a result of their interview the following telegram was sent by Gebhardt to Ford:

"MEMPHIS, TENN. 19th.

"To Rochester Ford, Laclede Building, St. Louis:

"Will accept $900 cash if not sold otherwise. See Somerville at once. Show telegram.

"GEBHARDT."

On the receipt of this telegram by plaintiff on the nineteenth of June, he went to see Somerville and showed him the telegram. At this time he had not received Gebhardt's letter of the eighteenth, but about the same time received the following telegram from him:

"June 19th.

"*J. C. Somerville, St. Louis.*

"Letter from Ford to-day offers nine hundred for lots; see him.

"GEBHARDT."

In regard to this interview the plaintiff testifies: "I told Mr. Somerville that I would take the lots at this price and would pay Mr. Somerville the amount due to him by Mr. Gebhardt and would pay to Dr. Pool the amount due by Gebhardt to Pool which Somerville had assumed, and would pay the balance to Gebhardt; and that I would have the title examined—after which I left. * * * Somerville said either 'yes' or 'all right.' I asked him how much Gebhardt owed him and he told me I could learn that from Gebhardt. Further than that I think Mr. Somerville did not say anything." On cross-examination in regard to this interview, he testified that Mr. Somerville did not make known to him that he (Somerville) had written to Gebhardt and was then expecting an answer from him, and that he would not swear that Mr. Somerville said "yes" or "it is all right" in response to his proposition, but that he "may have said nothing."

Mr. Somerville testified in substance that, "when Mr. Ford came in there with the telegram, he showed it to me or read it to me. I said I supposed it was all right, that I had been expecting to get a letter from Mr. Gebhardt for some time. I did not agree to the sale, but referred Mr. Ford to Mr. Gebhardt." After this

interview on the same day he wrote Mr. Ford the following letter:

"June 19, 1890.

"*Mr. R. Ford, Room 119, Laclede Building, City.*

"DEAR SIR:—Referring to the lots 8 and 9 on Vernon avenue, would say before selling them wish to make some further inquiries and possibly I will conclude to buy them from Mr. Gebhardt myself, which right I reserve. However, I will give you a decided answer as soon as I hear from him in response to a letter written several days ago and also a letter by to-day's mail.

"Yours truly,

"J. C. SOMERVILLE."

And to Mr. Gebhardt the following letter:

"June 19, 1890.

"*Messrs. Gebhardt & Co., Memphis, Tenn.*

"GENTS:—Your telegram just to hand, stating offer made by Mr. Ford, who at the same moment called on us with telegram from you accepting his offer of $900. He says he will have the title run down and buy it at that price. Of course we will either sell it to him at $900 or buy it ourselves, as I think you will allow us this action. However, if you wish us to sell it to him you had better write him, instructing that he pay us the amount of account as per our last two letters, and of course the guarantee of $166.66 will have to be deducted from price.

"Yours truly,

"J. C. SOMERVILLE."

On the morning of the twentieth Somerville received Gebhardt's letter of the eighteenth and immediately wrote Mr. Ford the following letter:

"DEAR SIR:—This morning I have a letter from Mr. Gebhardt, dated June the eighteenth, accepting

VOL. 114—20

our settlement and offer to him for his lots, and as he states he is in urgent need of the money and requests us to send N. Y. draft immediately, we do so to-day. I thought it best to advise you of this at once, so as not to cause you any trouble or inconvenience.

"Yours truly,

"J. C. SOMERVILLE."

As indicated in this letter the draft was sent by Somerville to Gebhardt and the affair closed up between them on the basis of Somerville's letter of the nineteenth to him. On the same day (the twentieth) Ford says he received both of Somerville's letters of the nineteenth and twentieth. He immediately went to see Somerville, claimed that he had purchased the property, offered to comply with his proposition and demanded that the contract with him be carried out; and on the same day made a like demand formally by letters addressed to and received by both Somerville and Gebhardt, and upon their refusal to comply with this request instituted this suit.

I. In order to entitle the plaintiff to the relief sought in this case it devolved upon him to show a contract actually concluded between him and Gebhardt and Somerville for the purchase of the land in question. "If what passed between them was but treaty or negotiation, or an expectation of contract, * * * no specific performance can be had." Fry on Specific Performance of Contracts, sec. 264. And if it be doubtful whether the contract was concluded or the negotiation still remained open specific performance will be refused. Fry on Specific Performance of Contracts, sec. 269. As was said by FOSTER, J., in *Lyman v. Robinson*, 14 Allen, 254. "Care should always be taken not to construe as an agreement letters which the parties intended only as a preliminary negotiation. The question in such cases always is,

did they mean to contract by their correspondence, or were they only settling the terms of an agreement into which they proposed to enter after all its particulars were adjusted, which was then to be formally drawn up and by which alone they designed to be bound.''

The contention of the plaintiff seems to be, that his letter to Pool shown to Gebhardt on the nineteenth of June, in which he makes inquiry whether Gebhardt wants to sell at $9 per foot and Gebhardt's telegram to him on the same day saying ''will accept $900 cash if not sold otherwise. See Somerville at once. Show telegram''— became a concluded contract binding on Gebhardt as soon as he showed the telegram to Somerville and signified his willingness to take the property at that price, unless at that time a valid contract of sale of the property had been made by Gebhardt to Somerville. And upon this theory he makes an elaborate argument to show that such sale had not been effected because Gebhardt in his letter to Somerville of the eighteenth did not accept unconditionally the terms in Somerville's letters of the ninth and tenth of June.

This argument is not sound, for while Gebhardt does criticise two of the items of the account, he expressly yields to the inevitable as to the one, the $166.66, which Somerville had guaranteed, and as to the other $20 for the abstract does not insist upon it as a condition of settlement, but simply leaves it to Somerville's sense of justice and right to allow it or not; but whether allowed or not, he in effect, if not formally, accepted the proposed terms by insisting that Somerville shall at once send him the draft as he offered to do for the balance. If this letter had been received by Somerville in the usual time on the nineteenth, doubtless the draft would have been sent and this controversy never would have been heard of. If

he had done so, and Gebhardt had refused to execute a release of his interest in the property, there can be no doubt, on his own letter, he could have been compelled to do so. But however this may be, the premise upon which the argument is based is not correct.

The assumption that the words "otherwise sold" as used in the telegram is to mean a sale already accomplished, is not warranted. The only reasonable inference the plaintiff could draw from the use of these words in the telegram under the circumstances was that Gebhardt had then in process of negotiation a sale to some other person, and in case that sale should not finally be consummated he (Ford) should have the property at $900. It was so consummated to Somerville as he anticipated it would be, and we cannot see that he was under any obligation to Ford, legal or equitable, to forego such consummation.

It is also evident from all that passed between Somerville and Ford that Somerville did not intend to commit himself to an agreement to a sale to which Gebhardt had not yet committed himself, and we look in vain through the whole evidence and correspondence in this case for an absolute and unequivocal promise on the part of either of these defendants that the plaintiff should have this property upon the payment of $900 in the manner in which he proposed to pay it.

There are no equities growing up in this case out of part performance; for the plaintiff is not out a dollar by reason of any assurance given him by either of the defendants. He has simply lost a bargain which he hoped to, but did not, get. The only real ground of complaint that he has is that Mr. Somerville was not as frank with him as he might have been when he first showed him Gebhardt's telegram; for which, however, Somerville made amends almost immediately thereafter by advising him fully in writing of his intentions:

and if, as he says, he did not receive this letter until the next day, it yet does not appear that the situation was at all changed, or that he lost anything by not knowing those intentions sooner.

We see no ground for the interposition of a court of equity in this case. The plaintiff's bill was properly dismissed by the trial court and its judgment is affirmed. All concur.