DALE E. BARTHEL et al., Appellants, v. JESSE D. ENGLE.

### Division Two, July 14, 1914.

**SPECIFIC PERFORMANCE: Sale by Heirs: One Heir Willing to Sell.** Evidence showing merely that one of several heirs was conducting negotiations looking to a sale of land held in common, and was willing that it should be sold if the others agreed, does not warrant a decree of specific performance for his share.

Appeal from Dallas Circuit Court.—*Hon. C. H. Skinker,* Judge.

REVERSED AND REMANDED (*with directions*).

*James H. Richardson, W. N. Finley* and *Fyke & Snider* for appellants.

The court erred in rendering judgment in favor of defendant for a one-fifth interest in the land because there was no evidence to support such judgment and because it is outside the issues raised by the pleadings. Ford v. Gebhardt, 114 Mo. 298; Hill v. Mining Co., 119 Mo. 27; Blaine v. Knapp, 140 Mo. 251; Gibson v. Cranage, 39 Mich. 49; Zaliski v. Clark, 44 Conn. 218; Printing Co. v. Thorpe, 36 Fed. 414; Walker v. Auto Co., 124 Mo. App. 636; 36 Cyc. 789.

*John S. Haymes, O. H. Scott* and *Levi Engle* for respondent.

The court properly rendered judgment for defendant for one-fifth of the land; for where a party contracts to sell more than he has, the purchaser is entitled to the performance to the extent of the interest of the party contracting. Lucket v. Williamson, 31 Mo.

58; McGhee v. Bell, 170 Mo. 132; Lamyon v. Chesney, 186 Mo.. 556; Bales v. Roberts, 189 Mo. 66.

WILLIAMS, C.—This is an action in ejectment to recover possession of one hundred and sixty acres of land in Dallas county, Missouri. One Harmon Barthel, grandfather of plaintiffs, died about 1892, seized of the fee simple title to the land in question and left surviving him as his sole and only heirs his widow, four sons and three grandchildren. The widow died in 1907. The three grandchildren are the plaintiffs in this suit and are the only children of one of the sons of said Harmon Barthel, said son having died a short time before the death of said Harmon Barthel. The four sons of Harmon Barthel who survived him were Alvin W., Herman J. C., Julius H., and Oscar H., none of whom are parties to this suit. On April 12, 1910, the above-named grandchildren obtained, by quitclaim deed, all the right, title and interest of the other above-named heirs in and to this land. The evidence on the part of plaintiffs further tended to show that in August, 1910, one of the plaintiffs, then living in Illinois, made a trip to Dallas county, Missouri, on behalf of himself and his sisters, to see the land, and found the defendant in possession of the same. The witness asked defendant why he was in possession of the land and the defendant replied that he had the right of possession by reason of a contract to purchase. Defendant refused the request to show said contract. Demand for peaceable possession was thereupon made but defendant refused to give up possession and thereafter this suit was instituted.

The petition in this case was in the usual form. The answer, after admitting possession in the defendant, pleaded a general denial. The answer further alleged that defendant entered into a contract with the plaintiffs and the other above-named heirs by which they agreed to sell said land for a consideration of

$1600 and that defendant was in possession of said land under and by virtue of said contract of purchase; that defendant ever since the making of said contract was ready and willing to pay said purchase price upon the delivery to him of proper deeds, conveying the legal title of said property to him; the answer further alleged that Alvin W., Herman J. C., Julius H., and Oscar H. Barthel undertook, by a quitclaim deed dated April 12, 1910, to convey their interest in said land to plaintiffs, and that plaintiffs, at and prior to said date, knew of defendant's aforesaid contract for the purchase of said land. The prayer was for specific performance of said contract.

The evidence on the part of defendant was to the following effect: On July 18, 1909, Herman J. C. Barthel, residing in Illinois, then the owner of an interest in said land, by reason of being one of the heirs of said Harmon Barthel, deceased, wrote a letter to Mr. N. Finley, of Cloverdale, Missouri, in which he stated: "The place is for sale. Do you think you could find a buyer for it? If there is any one that wants to buy the place let me know and I will see that I or one of the heirs will be there to sell it." Mr. Finley thereupon saw the defendant and defendant made an offer of $1500 for the land. Finley wrote to Herman Barthel concerning defendant's offer. In replying to this letter, Herman Barthel wrote Finley, under date of November 29, 1909, in part as follows: "Received your letter a few days ago and was glad to hear from you. In regard to the farm you said the man offered $1500 —Fifteen Hundred Dollars for the place, but you think you can get $1800 or $1850; well then I had better put the price $2000 and if you can't get that you can shade it $100 to $150 to make it the $1850, which you say you think you can get."

After this Finley again saw the defendant and defendant made an offer of $1600 for the place and Finley submitted this offer by letter to the said Herman

Barthel. In this last letter Finley enclosed a blank deed containing a correct description of the land. On December 27, 1909, Herman again wrote Finley, in part as follows: ''Received your letter a few days ago and was glad to hear from you. Must have been delayed some as it has sometime since it was wrote. Will hear from the other heirs in a week or ten days and can tell if the offer is all O. K. to them, if so, will have the papers drawn up but think ought to have $1700 anyway to leave us out.'' On January 17, 1910, Herman again wrote to said Finley, in part as follows:

''Mr. Finley if that offer is good yet on the farm let me know by return mail. It takes quite a while to get mail this winter as the R. R. are blocked so much. The heirs are all willing to sell I think; there is one that I haven't heard from yet; he is in Minn. some place and can't get him located as yet but hope to in a few days and as soon as we or I do I will turn the matter over to my brother Alvin S. Barthel, at Milledgeville, Ill., and he can tend to it better and quicker than I can as I am quite a ways from the P. O. and when you write me again I will let him know right away what you said in your letter and I will send the papers to him today what you sent to me.''

Finley thereupon wrote Herman that the offer was still good. Witness Finley further testified that after that time he received another letter from Herman Barthel but that the letter had become lost or destroyed. Upon proper showing the court permitted the witness to testify to what was said in this lost letter and Mr. Finley testified that Herman Barthel in his letter said: ''Us four are willing to take the bid,'' or ''Us four are will to take the $1600 for the land.'' The witness testified further concerning the contents of this lost letter as follows: ''He said his brother in Minnesota wrote and it was all O. K. and they would take the $1600 for the farm. He said he had heard from his brother in Minnesota; that he had wrote to

him; and they was all willing to sell and they would accept the proposition." And further: "He was hunting the heirs up and he said that four of them was willing to sell for that."

The defendant testified that he saw this letter which was afterwards lost and that in that letter Herman wrote: "I got a letter from my brother in Minnesota and he is willing to accept the offer of $1600 for the land." Defendant further testified in this regard: "He said he would hurry the matter up as fast as he could as the heirs were scattered around. He said he would hurry the matter up as fast as he could and get them to sign the deed."

The defendant further testified that after seeing this letter he "supposed they was going to send the deed" and that in March thereafter he took possession of the land. There was evidence tending to show that the rental value of the farm was about $40 per year. The court found in favor of plaintiffs for a four-fifths interest in the land and for $35 damages, finding that the rental value of their interest in the land was three dollars per month. The remainder of the decree is somewhat indefinite and uncertain in meaning, but it undertakes to decree the title of a one-fifth interest, being the interest formerly owned by Herman J. C. Barthel, out of plaintiffs and to vest the same in defendant and that defendant be required to pay into court $320 for said interest. Plaintiffs duly perfected an appeal to this court.

Appellants contend that the court erred in rendering judgment in favor of defendant for a one-fifth interest in the land, because there was no evidence to support the same.

The law with reference to the rights of a *vendor* to have a contract for the sale of the land specifically

**Specific Performance.** performed is that he must have all the title he contracts to sell before he can insist upon the enforcement of the same, or

in other words, it must be enforced as an "entirety,"
if at all, and not by "piecemeal." [Luckett v. Wil-
liamson, 31 Mo. 54, l. c. 58; Hill v. Rich Hill Coal Min-
ing Company, 119 Mo. 9, l. c. 27, and authorities therein
cited.] But with reference to the *purchaser* the situa-
tion appears to be different and the general rule is that
where the vendor does not have title to all the land
which he contracts to sell, the purchaser, if he so de-
sires, "can insist on having all the vendor can convey
with a compensation (or abatement of the purchase
price) for the difference." (Parentheses ours.) [Luck-
ett v. Williamson, supra, l. c. 58; McGhee v. Bell, 170
Mo. 121; Bales v. Roberts, 189 Mo. 49, l. c. 66; 2 Story,
Eq. Juris. (13 Ed.), sec. 779.]

Respondent, relying upon the line of cases last
above cited, contends that while the evidence fails to
show that Herman J. C. Barthel had
authority to contract for the sale of the
interest of the other heirs in said land,
yet the contract was valid as to his one-
fifth interest and that therefore the defendant was
properly allowed to have the contract enforced with
reference to said one-fifth interest. The defect in this
contention is that it assumes, as existing, that which
did not exist, to-wit, proof of an unequivocal agreement
upon the part of said Herman J. C. Barthel to convey
all or any part of said land. The evidence does show
that he, as *one* of the heirs, was willing to sell the land
for the price offered, and that he was corresponding
with some of the other heirs trying to get their consent
to the sale. In one of the letters he said, "I *think*"
all the heirs are willing to sell. Later he wrote that
*four* of the heirs were willing to sell. It appears from
the evidence that at that time there were *seven* heirs,
each owning an interest in the land. It clearly appears
from the correspondence that his consent to sell was
conditional upon all the heirs agreeing to the sale.
In one of the letters he says: "Will hear from the

*Negotiations for Sale by Heirs: One Willing to Sell: No Contract.*

other heirs in a week or ten days and can tell if the offer is all O. K. to them, *if so,* will have the papers drawn.'' At most the correspondence shows nothing more than negotiations upon his part attempting to bring about a sale by getting the consent of the other heirs and nowhere does it appear in the correspondence that he *agrees,* or *undertakes to obligate himself;* either individually, or jointly with the other heirs, to sell the land. The evidence therefore shows the absence of a concluded agreement to sell and hence the absence of the right of specific performance. Discussing a very analogous situation, Judge BRACE, in the case of Ford v. Gebhardt, 114 Mo. 298, l. c. 306, said:

''In order to entitle the plaintiff to the relief sought in this case it devolved upon him to show a contract actually concluded between him and Gebhardt and Somerville for the purchase of the land in question. 'If what passed between them was but treaty or negotiation, or an expectation of contract, . . . no specific performance can be had.' [Fry on Specific Performance of Contracts, sec. 264.] And if it be doubtful whether the contract was concluded or the negotiation still remained open, specific performance will be refused. [Fry on Specific Performance of Contracts, sec. 269.] As was said by FOSTER, J., in Lyman v. Robinson, 14 Allen, 254: 'Care should always be taken not to construe as an agreement letters which the parties intended only as a preliminary negotiation. The question in such cases always is, did they mean to contract by their correspondence, or were they only settling the terms of an agreement into which they proposed to enter after all its particulars were adjusted, which was then to be formally drawn up and by which alone they designed to be bound.' ''

It follows that the court erred in decreeing that the title to one-fifth of said land be divested out of plaintiffs and vested in the defendant. Other questions are presented by the record but the above point

is decisive of the case and renders unnecessary further discussion.

The judgment is reversed and the cause remanded with directions to the circuit court to have such further proceedings in the cause as shall become necessary to ascertain and determine the outstanding matter of rents and profits for the whole of the tract and upon the determination of that matter to enter judgment against the defendant and in favor of plaintiffs for the possession of the entire tract of land described in the petition and for such amount of damages as the court may find. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.