# McGHEE et al. v. BELL et al., Appellants.

### In Banc, November 12, 1902.

1. **Purchase of Land: FALSE REPRESENTATIONS AS TO QUANTITY: EQUITABLE COMPENSATION.** Where the vendor of land has been guilty of actual fraud upon the vendee in inducing him to agree to pay for more than was actually conveyed to him, by pointing out a neighbor's land as being a part of the tract about to be conveyed, in such a way as to make·his representations assurances of measurement, a court of equity will determine how much of the unpaid balance of the agreed price the vendee must pay, and while preserving a vendor's lien on the balance thus actually due, will enjoin him from enforcing a mortgage lien for so much of the unpaid purchase price as in equity the vendor has no right to.

2. ————: ————: **CANCELLATION OF MORTGAGE: EQUITABLE INTERFERENCE OR ACTION AT LAW?** The vendor of land falsely represented to the vendee that there were 90 or 100 acres in the tract, and that he would warrant it to contain 80 acres, and in pointing out to him the boundaries thereof deceptively included land belonging to a neighbor. He also by artifice induced the vendee not to be present at the drawing of the deed, which described the lands by metes and bounds, with which manner of description the vendee, who could not read, was wholly unacquainted. The vendee paid something over half of the purchase price in cash, and received a warranty deed for the land, and gave the vendor a deed of trust for the balance, and moved onto the land and made valuable improvements before he discovered that there were only 61 acres. *Held,* that the acts of the vendor were actual and positive fraud, and that the vendee is not shut up to an action at law to recover whatever damages he has sustained, nor is he bound in order to be compensated for the deficiency in quantity of the land conveyed, to rescind the whole contract and take back the purchase money paid and have his note and deed of trust cancelled, but he is entitled to the protection of a court of equity and to have the deed of trust and the note for the deferred payment cancelled, and the vendor is entitled to a vendor's lien on the land for the difference between the amount paid in cash and the *pro tanto* value of the land actually sold, and this equitable interference is justified because in an action at law rescission *pro tanto* and equitable compensation are not recognized. Such case is analogous

to a bill for specific performance of a contract of purchase, wherein the rule is: "Where a misrepresentation is made as to the quantity, the purchaser is entitled to have what the vendor can give, with an abatement out of the purchase money for so much as the quantity falls short of the representation."

3. ———: ———: CANCELLING MORTGAGE WHILE DEBT IS DUE. In such case the court is not without authority to cancel the deed of trust, on the theory that a part of the purchase money is yet due and unpaid, if it expressly decrees the beneficiary a vendor's lien on the land for whatever sum is actually due.

4. ———: ———: MEANS OF ASCERTAINING QUANTITY: UNEQUAL FOOTING OF VENDOR AND VENDEE. Because the vendee had the means of ascertaining the true quantity of land conveyed to him, he will not be denied redress for the false assurances of measurements and representations as to the number of acres in the tract conveyed to him. The vendor in such case is in no position to invoke his own fraudulent conduct as a defense to the just claim of the vendee resulting from that fraud, because the vendor who was well acquainted with the land, in pointing out to an ignorant vendee the tract he proposed to sell, included land that belonged to another, and suppressed from his examination the title deeds, and for that reason the vendor and vendee did not stand on an equal footing.

5. ———: ———: MEASURE OF DAMAGES. Where the vendee stipulated for a certain number of acres for a certain gross sum, and the number of acres actually conveyed is less than that number, he is entitled to recover, in the absence of proof that the land was not of uniform value, such a proportion of the entire purchase price fixed upon, as the number of acres lacking bears to the entire number stipulated for. The presumption is that in fixing the price regard was had on both sides to the quantity which both supposed the tract consisted of.

PER BURGESS, C. J., IN DISSENTING OPINION.

1. Purchase of Land: FALSE REPRESENTATION AS TO QUANTITY: EQUITY UNAVAILABLE. Where the vendor conveys to the vendee all the land sold to which he has title, though less in quantity than he had contracted to sell, and the deed is accepted by the vendee, the vendee can not file a bill in equity for the mere purpose of obtaining compensation in damages for fraud practiced upon him by the vendor in the sale of the land, but he must resort to his remedy at law for that purpose, where the case may be tried before a jury if either party so desires, and no authority cited in support of the majority opinion holds to the contrary.

McGhee v. Bell.

2. ———: ———: SPECIFIC PERFORMANCE NOT ANALOGOUS. The action is not one for specific performance of a part of a contract for the sale of land, nor could an action for specific performance be maintained, for the reason that the vendee had received and accepted from the vendor a warranty deed for all the land which the tract he sold him contained, and although it conveyed a less quantity than he contracted to sell, yet the vendee retained said deed with full knowledge of the fact and had it in his possession at the time of the institution of the suit, and, hence, there was nothing on the part of the vendor to perform.

3. ———: ———: CANCELLATION OF MORTGAGE AND NOTE: VENDOR'S LIEN: EQUITY JURISDICTION: NECESSARY PLEADING. To give an equity court jurisdiction to decree satisfaction of the deed of trust and to cancel the note for the balance of the purchase price, given in pursuance to a contract of purchase of land, it is essential that the petition aver that the note and deed of trust were obtained by fraud, or that the vendor was insolvent, and that the vendee had no adequate remedy at law, and that he desired to pay the balance of the purchase money if the court found any part of it to be due the vendor, or that he desired to have the contract rescinded. A mere allegation that the fraudulent conduct of the vendor in falsely representing to the vendee that the tract contained 80 or more acres when in fact it contained only 61, and that the vendee was thereby induced to buy the land, does not authorize a court of equity to take these essential averments for granted and to assume jurisdiction to decree satisfaction of the deed of trust and cancellation of the note and to go further and ascertain how much remains due under the contract of purchase and decree a vendor's lien on the land for that amount.

4. ———: ———: ———: PART ANNULMENT OF CONTRACT. A party can not affirm a contract in part and repudiate it in part. He can not hold land under a warranty deed and have a note and deed of trust given in payment thereof cancelled because the vendor, by falsely representing the number of acres in the tract conveyed to him, obtained a note for a larger amount than was due him.

5. ———: ———: ———: JUDGMENT: MUST RESPOND TO ISSUES. The judgment in this case, which ascertained how much was due a vendor for land sold by him and decreed him a vendor's lien therefor, and decreed a satisfaction of a deed of trust and a cancellation of the note given for the deferred payment of the purchase price, is not authorized by the petition which simply prayed for such satisfaction and cancellation on the theory that the vendee had paid for all the land conveyed to him, and that the vendor was guilty of fraud in his representations as to the number of acres in the tract.

Appeal from Benton Circuit Court.—*Hon. W. S. Jackson*, Special Judge.

AFFIRMED.

*Henry P. Lay* for appellants.

(1)    Plaintiffs' petition is without equity, and fails to state any cause of action because:    (a)    It attempts to force on the defendant a new contract, to which he never assented.    Norton v. Bohart, 105 Mo. 631; Fruin v. Railroad, 89 Mo. 405.    (b)    It attempts to retain the benefits derived from a contract, and to avoid the obligations arising from the contract.    Smith v. Busby, 15 Mo. 393; Woodward v. Van Hoy, 45 Mo. 300; Beaty v. Coal Co., 56 Mo. App. 221; Norton v. Bohart, supra; Estes v. Reynolds, 75 Mo. 563; Fruin v. Railroad, supra. (c)    A vendee who claims to have been induced to purchase land by fraudulent misrepresentations made by the vendor can not retain possession 'of the land purchased and avoid the payment of any part of the purchase money because of fraud.    If he desires to avoid any part of the contract of sale he must deliver possession, tender back a deed and rescind the whole contract. 21 Am. and Eng. Enc. of Law (1 Ed.), 84, 91; Estes v. Reynolds, supra; Lopp v. Ryan, 23 Mo. App. 436.    (d) While the prayer of the petition is for the cancellation of a deed of trust on the ground that the debt secured has been paid, yet the other allegations of the petition show that no part of the debt has really been paid, and that the real object of the petition is to rescind a part of the contract of sale, while affirming the remainder, which can not be done.    Lewis v. Land Co., 124 Mo. 672; Estes v. Reynolds, supra; Crumb v. Wright, 97 Mo. 18; Robinson v. Siple, 129 Mo. 208; Bogard v. Bogard, 138 Mo. 429.    (2)    The judgment is erroneous on its face. The facts found by the court, even if supported by the evidence, do not authorize the court to grant the relief it does.    The facts as found by the court show the plaintiffs to be entitled to legal damages, if anything, and

the relief granted is purely equitable. The judgment is also erroneous because the finding of the court that the sale to McGhee was a sale by the acre is supported neither by the allegations of the petition nor by any evidence. (3) A mere statement of opinion as to quantity by a vendor, even though mistaken, does not entitle the vendee to relief, especially where, as in this case, the vendee has ample opportunity to investigate and judge for himself. 14 Am. and Eng. Enc. Law (2 Ed.), 34; Anderson v. McPike, 86 Mo. 293; Nauman v. Oberle, 90 Mo. 666; Bank v. Hunt, 76 Mo. 439; Dalrymple v. Craig, 149 Mo. 345; Lewis v. Land Co., 124 Mo. 687. (4) On discovering the fraud the vendee of lands must proceed to rescind the contract of sale promptly, and *in toto,* and place the vendor *in statu quo.* A failure to do so leaves him only his legal action for damages for the deceit. Lewis v. Land Co., supra; Lapp v. Ryan, supra; Robinson v. Siple, 129 Mo. 222; Taylor v. Short, 107 Mo. 384; Dougherty v. Stamp, 43 Mo. 247; Estes v. Reynolds, supra; Kirk v. Seeley, 63 Mo. App. 266; Crumb v. Wright, supra. (5) (a) Under the pleadings and evidence, the trial court should have rendered judgment in favor of defendant Bell for the possession of the land, and for damages at the rate of $35 per year at least. Baker v. St. Louis, 75 Mo. 671; Morrison v. Herrington, 120 Mo. 665. (b) And it is proper for this court to enter such judgment now, this being an equity case, and there being no serious dispute as to the material facts upon which defendant's right to possession is based. Darrier v. Darrier, 58 Mo. 234; Huff v. Shepard, 58 Mo. 242; Land Co. v. Hays, 105 Mo. 143.

*W. L. P. Burney* for respondents.

(1) A party defrauded in a contract may stand by it, even after he discovers the fraud, and recover damages resulting from the fraud, or he may rescind the contract and recover back what he has paid or sold. Parker v. Marquis, 64 Mo. 38; Nauman v. Oberle, 90 Mo. 666; Brownlow v. Wollard, 61 Mo. 124; 14 Am. and Eng. Ency. Law, 168; Hall v. Clark, 21 Mo. 415;

Schultz v. Christman, 6 Mo. App. 238; Cahn v. Reid & Bungardt, 18 Mo. App. 115. (2) When a person who has been drawn into a purchase or other contract by fraud does not seek to rescind the same, but merely seeks to recover the damages sustained by reason of the fraud, he is not required to return or offer to return what he has received under the contract. He may retain the same and recover his damages. 14 Am. and Eng. Ency. Law, 168; Shinnebarger v. Shelton & Lane, 41 Mo. App. 147; Hitchcock v. Baughman, 36 Mo. App. 216; Brockhaus v. Schulting, 52 Mo. App. 73; Heed v. Pierce, 8 Mo. App. 568; Prior v. Foster 130 N. Y. 171. (3) Where a petition contains a prayer for general relief, a court will grant any and all relief that is necessary to substantial and complete justice between the parties. Schneider v. Colyer, 72 Mo. 569; Pomeroy v. Benton, 57 Mo. 531; Rankin v. Charles, 19 Mo. 490; Bevins v. Powell, 83 Mo. 365; Harper v. Kendell, 65 Mo. App. 514; Crosby v. Bank, 107 Mo. 436; Conrad v. Harris, 89 Mo. 217. (4) (a) Where a court of equity has once obtained jurisdiction of a cause, it will not relinquish same until it has done full and complete justice between the parties. 11 Am. and Eng. Ency. Law (2 Ed.), 201; McDaniel v. Lee, 37 Mo. 204; Boynton v. Miller, 63 Mo. 209; Holland v. Anderson, 38 Mo. 55. (b) Equity has ancient and original jurisdiction in matters of fraud and deceit, and, where these are present, its jurisdiction will not be ousted, notwithstanding the party has also an action at law, but will take charge and decide all matters between the parties, to prevent a multiplicity of suits. Nelson v. Betts, 21 Mo. App. 232; Biddle v. Ramsey, 52 Mo. 153; St. Louis v. Gaslight Co., 70 Mo. 105; Bales v. Gilbert, 84 Mo. App. 679; Rogers v. Bank, 82 Mo. App. 377; Black v. Rogers, 75 Mo. 441. (5) The measure of damages for false representations on a sale is the difference between the value as represented and as it actually is, and not the difference between the market value and the price paid. Davenport v. Anderson, 28 S. W. 922; Farmer v. Randall, 28 S. W. 384; Bank v. Byers, 139 Mo. 627;

Assyln v. Frank, 8 Mo. App. 116; Cahn v. Reid, 18 Mo. App. 116; McBeth v. Craddock, 28 Mo. App. 380; Clark, Admr. v. Railroad, 36 Mo. 216; Shinnebarger v. Shelton, 41 Mo. App. 147. The petition does not in so many words ask for damages, yet the facts alleged and the prayer for general relief entitle plaintiff to damages. Cahn v. Reid, 18 Mo. 120; Schultz v. Christman, 6 Mo. App. 338; Heed v. Pierce, 8 Mo. App. 568; Hull v. Pace, 61 Mo. App. 120.

## In Division Two.

GANTT, J.—This is a suit in equity to enjoin the sale of plaintiffs' land under a certain deed of trust alleged to have been procured by fraud, and for the cancellation of the same, and for general relief. The petition, omitting the caption, is as follows:

"Plaintiffs for their cause of action against defendants, state that on the —— day of March, 1896, they purchased from defendant, Samuel Bell, a certain tract of land in Benton county, Missouri, described as follows, to-wit: the south part of the northwest fractional quarter of section three in township forty of range twenty-three, lying in the following metes and bounds: commencing at the southeast corner of said quarter section running on the half-mile line north to a point opposite the fence between James Neece and Adam J. Neece, and west with said fence to the slough, and down the slough to Grand river, and up Grand river to James Foster's land, and from thence east to place of beginning, containing eighty acres more or less; that at the time of said purchase and conveyance, defendant, Samuel Bell, represented to plaintiffs that said tract contained not less than eighty acres of land; that defendant showed and pointed out the boundary lines of said tracts of land to plaintiff and stated to plaintiff that a certain fence was on said land, and was the property of defendant; that the well on said premises afforded an abundance of water for house use; that plaintiff had no knowledge of the number of acres contained in said tract, nor

as to the area or boundaries thereof; that they were ignorant as to the capacity of said well to afford water for family use, but wholly, and entirely relied on the statements and representations made at the time by defendant, and so relying on said representations of defendant that said tract did contain eighty or more acres, and that the well was as represented by defendant, plaintiffs were induced to and did purchase said tract of land at the sum and price of six hundred dollars, three hundred and eighty-five dollars of which they paid at the time, and for the two hundred and fifteen dollars balance of the purchase price of said land plaintiffs executed and delivered to defendant, Samuel Bell, their promissory note, and secured the same by making, executing, acknowledging and delivering to defendant a deed of trust conveying to defendant, James R. Jones, trustee, for the purpose aforesaid, which said deed of trust is dated the 16th of March, 1896, and recorded in the recorder's office of Benton county, at deed book, 67, page 188.

"The plaintiffs say that the tract of land so sold and purchased contained only fifty acres of land; that the lines of boundary as pointed out by defendant includes lands owned by others and not by defendant, and that said well has absolutely failed to furnish water as represented, and plaintiffs have been compelled to haul water for house use, and that the representations of defendant made to plaintiffs were false and fraudulent, all of which was well known to defendant at the time, and were made for the purpose of deceiving and defrauding plaintiffs; that plaintiffs discovered the fraud some time after said purchase, and after they had greatly improved and added to the value of said property.

"Plaintiffs say that they are uneducated and wholly incompetent to understand or comprehend a description of land by metes and bounds, and that defendant brought to them the deed, made, executed and acknowledged, and told them that said deed contained a description of eighty or more acres of land, and that they accepted said deed and paid said sum of $385, and exe-

cuted said note for $215 and the deed of trust, on account of defendant's representations, and relied wholly thereon, and but for said representations by defendant, Samuel Bell, plaintiffs would not have purchased said tract.

"Wherefore plaintiffs say they have already paid full value for the land actually conveyed to them by defendant, and ask *that defendant be required to bring said note and deed of trust into court, that the note be cancelled and held for naught; that the deed of trust be declared fully satisfied, and that defendants or either of them be forever enjoined from collecting said note by sale* under said deed of trust, or otherwise, and for such other relief as to the court may seem just and proper."

The answer of defendant Bell admits the execution of the deeds as alleged in the petition and that the deed of trust and note were given to secure part of the purchase price of the land described in the petition, but denies all the other allegations in the petition. For further answer it alleges default in the payment of the note secured by the deed of trust, and an advertisement and sale by defendant Jones, the trustee therein, under the provisions of the deed of trust on July 3, 1897, at which defendant Bell became the purchaser for $250 and the execution of a trustee's deed to defendant Bell, and then concludes with a count in ejectment and prayer for possession. The reply admits the sale by the trustee and that he made defendant Bell a deed as alleged in the answer and denies all the other new matter set up in the answer. The cause was tried as a suit in equity and the court found that defendant Bell represented the tract of land as containing at least eighty acres, and nearer ninety or one hundred; that his representations were false and fraudulent and that plaintiffs were wholly ignorant of the number of acres in said tract; that plaintiffs paid $385 on the purchase price and gave a deed of trust on the same land to secure the balance of $215; that the contract price was $600, or at a rate

Vol 170 mo—9.

of $7.50 per acre; that in fact the tract only contained sixty-one acres and plaintiffs were damaged to the amount of $142.50 on the price of nineteen acres at $7.50; that pending the action the trustee sold the whole tract under the deed of trust and defendant Bell purchased the same and received a trustee's deed therefor.

By its decree the court set aside the deed of trust and trustee's deed and upon an accounting decreed that plaintiff was indebted to defendant Bell in the sum of $72.50 as and for the balance of the purchase money and decreed defendant a lien on said tract of land for that sum, and required plaintiff to pay the same in ninety days with eight per cent interest from March 16, 1896, and upon his failure to do so, awarded special execution against said lands to satisfy said judgment and divided the unadjudged costs between the parties.

I.    The decree is assailed on the ground that the bill states no equity; that on the facts stated plaintiffs' only remedy was an action at law for damages.

The petition states a clear case of actual fraud whereby plaintiffs, the purchasers, were induced to accept a deed from defendant to a tract of land, represented by defendant to contain at least eighty acres when it in fact only contained sixty-one acres, and to pay the larger part of the purchase money cash, and to execute a deed of trust on the same land for the balance of the purchase money; that the plaintiffs were ignorant and uneducated people and wholly incompetent to understand or comprehend a description of land by metes and bounds and that to cover up the fraud and allay any suspicion of plaintiffs the defendant caused the deed to be prepared, executed, and acknowledged and brought to plaintiffs and represented to them that the deed contained the description of eighty or more acres and was the same as in his deed to said land, and that being ignorant of the number of acres in said tract, they relied entirely upon defendant's representations and paid their money and executed their note and deed of trust to secure the balance, when in

fact the tract only contained sixty-one acres; that plain-
tiffs greatly improved the land and added to the value
thereof, and only discovered the fraud sometime there-
after.

The court found all these allegations were true, and
the evidence was ample to sustain that finding.

The testimony disclosed that plaintiffs were very
ignorant, the husband being barely able to write his
name; that the defendant told them the land was irregu-
lar and fractional and while he would warrant them
eighty acres, it contained nearer ninety or one hundred
acres. It further appeared that defendant pretended
to show them the lines and fences, and falsely and fraud-
ulently showed them land and fences as a part of said
tract which belonged to other adjoining owners. It
was further developed by the testimony of the justice
of the peace who wrote the deed and took defendant's
acknowledgment, and of Mrs. Foster, and not denied
by defendant, that defendant took the deed by which
he acquired the land from Davis, his grantor, and
which described the land as *"fifty acres more or less"*
and directed the justice to write *eighty acres* instead
of fifty acres in the description of the tract, and when
asked by Mr. Wheeler the justice, why he wanted that
description changed, he answered that he knew there
was eighty acres in the tract. It also appeared that
one of the plaintiffs, the husband, offered to go with
defendant to the justice, but defendant told him it was
not necessary, that he (defendant) would go and see
first if the Squire was at home. It further appears that
plaintiffs went into possession after paying about two-
thirds of the purchase money, and giving a deed of trust
on the land to secure the balance, and cleared up about
four acres, and put out an orchard of 175 trees, and
never discovered the fraud until after they had put out
their crop, and the assessor came to assess the land the
next year when the assessor told them the tract con-
tained about fifty acres only. After this a survey was
made by which it was shown that the tract contained
sixty-one acres. It also appeared that defendant prom-

ised to bring the plaintiffs his old deed, but never did so; that plaintiff's family were all sick after this, and he waited to see defendant, who had moved into an adjoining county.

Few cases have ever been presented to this court in which the fraud alleged has been more fully sustained by the proofs.

The plaintiffs told defendant that they would not buy less than eighty acres and thereupon defendant, with his deed in his pocket calling for only fifty acres, deliberately concealed that fact from plaintiffs who were ignorant, uneducated people and prevented plaintiffs from being present when the deed was drawn, lest perchance they should make some embarrassing inquiries of the justice as to the old deed and thereby discover the falsity of his representations to them.

Nor are plaintiffs chargeable with negligence in relying on the representations of defendant. The land was a fractional piece lying on the breaks of Grand river, bounded partly by the river and a slough, and when defendant showed the plaintiffs the land, he fraudulently represented to them the boundaries of the land and told them certain fences belonged to it, which were on a neighbor's lands. Under such circumstances it ill becomes defendant to complain that these ignorant old people confided in his representations instead of insisting upon a new survey. Such shrewdness and precaution are not to be expected from people in their station of life, after such positive representations. Having discovered the fraud they found their whole tract covered by a deed of trust, procured as part of this fraudulent scheme, on the lands which they supposed they had bought, but which in fact fell short nearly a fourth of the number of acres for which they had bound themselves to pay, and liable to be foreclosed without an opportunity in a court of law to show the breach of the covenants as to the quantity they were to receive.

Under such circumstances is an action at law for damages their only remedy?

It is clear that upon equitable principles plaintiffs

were not bound to rescind the whole contract and take back their purchase money and have their note and deed of trust cancelled. In Hill v. Buckley, 17 Vesey 395, Sir WILLIAM GRANT, the master of rolls, stated the general rule to be: "Where a misrepresentation is made as to quantity, *though innocently,* the purchaser is entitled to have what the vendor can give, with an abatement out of the purchase money *for so much as the quantity falls short of the representation."*

In that case the contract of sale called for "217 acres more or less, and ten perches," whereas in fact it lacked twenty-six acres of being that much. In that case it was conceded by defendants' counsel that the words "more or less" would not cover the deficit of twenty-six acres, but they sought to defend on the ground that they were trustees of minors and that as the mistake was innocent and without fraud a court of equity would not cancel the agreement, but the master of the rolls decreed an abatement of the purchase money *pro tanto.*

In Graham v. Oliver, 3 Beavan 124, Lord LANG-DALE, master of the rolls, stated the general rule to be: "Where a party has entered into a contract for the sale of more than he has, the purchaser, if he sees fit to accept that which it is in the power of the vendor to give, is entitled to a performance *to that extent."*

And such was the unanimous opinion of the Supreme Court of New York, in Waters v. Travis, 9 Johnson's Reports 464. [2 Minor's Insts. 92-3; 2 Lomax Dig., 82-3; Triplett v. Allen, 26 Gratt. 722.]

And so the doctrine is laid down by Adams on Equity (8 Ed.), mar. page 91, and Story's Equity, sec. 779, and in Morss v. Elmendorf, 11 Paige, 288, Chancellor WALWORTH went to the extent of saying that where the vendor never had it in his power to perform at all, if the complainant had filed his bill in good faith, supposing at the time he instituted his suit in equity that a specific performance of the contract could be obtained under a decree of court, a court of equity might retain his suit and award him compensation in damages,

but it is unnecessary for us to go that far in this case. The general rule above laid down is fully and ably discussed and maintained both on principle, and in the light of the authorities in England and in this country, in Erwin v. Myers, 46 Pa. St. 96. Can it be said that in a court of conscience a vendee in possession under an executory contract to convey can insist upon a part performance with an abatement of a part of the purchase money *pro tanto*, but that if ignorant of the deficit in the quantity of the land sold and relying upon the false representations of the vendor he takes a warranty deed, and gives a deed of trust back to secure the purchase money, and before paying discovers the deficit and the fraud he can not, in a court of equity, have the same abatement and retain that which the vendor could sell and convey to him? We hold that a court of equity, which looks at the substance rather than the semblance of things, will treat the vendee in each case on the same principles and will adjust, on equitable grounds, in a proceeding analogous to a bill for specific performance, the compensation he is to receive for the deficit in quantity and while preserving the lien of the vendor for the balance, predicated on what he actually owned and sold, will enjoin him from enforcing a mortgage lien for that which in equity he has no right or title to. We hold that the positive and actual fraud by which plaintiffs were overreached and induced to make a deed of trust on their lands, entitles them to the protection of a court of equity, and to a remedial decree which a court of law could not give them under the circumstances, to adjust the equitable compensation for defects and remove the cloud of the fraudulently acquired mortgage. We have no hesitancy in saying that the fraud of defendant and the entanglements of plaintiff resulting therefrom fully justified the circuit court in retaining the bill and adjusting the equities between the parties.

The fraud of defendant is one of the recognized heads of equity jurisdiction, and the specific redress to which plaintiffs are entitled by the setting aside of the deed of trust and adjusting the balance actually due

McGhee v. Bell.

plaintiffs. and removing the cloud of the fraudulent deed of trust was and is not attainable in a simple action at law for damages since in a court of law rescission *pro tanto* and equitable compensation are not recognized and hence there is a prerogative jurisdiction in equity to relieve them, and a court of equity having once acquired jurisdiction will retain it to do complete justice.   [Holland v. Anderson, 38 Mo. 55; Real Estate Sav. Inst. v. Collonious, 63 Mo. 290, and cases cited.]

As to the complaint that the court cancelled the deed of trust while conceding that a part of the purchase money was still due, it is apparent no injury resulted from this part of the decree because the court expressly decreed a vendor's lien on all of the land for the ascertained balance of the purchase money, thus fully securing and protecting every equitable and just . claim of defendant.

The contention that plaintiffs can not complain of the deceit practiced upon them and the wrongs resulting therefrom because they had the means to ascertain the true quantity of the land, will not be countenanced in a court of conscience.

As was said in Starkweather v. Benjamin, 32 Mich. 305: "It can not be generally true that persons can judge of the contents of a parcel of land by the eye. When a positive assurance of the area of a parcel of land is made by the vendor to the vendee, with the design of making the vendee believe it, that assurance is very material and equivalent to an assurance of measurement."   The defense rested mainly on the ground that the purchaser saw the land and was as able to judge of its size as Starkweather.   It was held in that case that the doctrine invoked did not apply to the facts of the case.

And so we say here.   Having by fraud and suppression of the old deed deceived these ignorant plaintiffs and induced them to rely upon his fraudulent statements, defendant is in no position to invoke his own fraudulent conduct as a defense to the just claim of the plaintiffs resulting from that fraud.   The parties did not

stand on an equal footing. [Caldwell v. Henry, 76 Mo. 260; Raley v. Williams, 73 Mo. 310.]    Neither can his positive statements as to the number of acres be treated as mere opinions.    They were representations of facts as of his own knowledge and were false and constituted fraud. [Coon v. Atwell, 46 N. H. 510; Langdon v. Green, 49 Mo. 363; Dunn v. White, 63 Mo. 181.]

There was ample evidence of actual fraud in showing the boundaries and in suppressing the title deed and that plaintiffs relied upon the false representations of defendant.

Finally, it is urged that the court adopted a wrong standard of damages; that in compensating plaintiffs for their loss of the nineteen acres of land for which they gave their notes and deed of trust and which owing to the fraudulent representations of defendant they did not get by his deed to them, the court erroneously fixed the compensation at the amount per acre for which the whole tract sold; that he should have awarded them the difference between the value of the land as it was represented and its value as it actually was at the time of the sale.

There was no evidence tending to show that one part of the land was more valuable than another.    It was represented at eighty acres, and the circuit court took the view most favorable to the defendant under these circumstances, and estimated the land as represented to be eighty acres, and the whole price at $600 and reached the conclusion that the defendant had agreed to purchase   at the price of $7.50 per acre and as the deficit was nineteen acres he allowed plaintiffs in the proportion of nineteen to eighty or $142.50.    In so ruling the court was not without precedent.

In Gass v. Sanger (Texas), 30 S. W. 502, it was ruled in an action to recover for land lost because of conflict of the boundaries, that in the absence of any proof to the contrary, the measure of recovery was to be such a portion of the entire price as the amount lost is to the entire tract.    And to the same effect is Skinner v. Walker, 98 Ky. 729.

In Logan's Admr. v. Bryant, 44 S. W. 435, the vender represented the boundary as containing forty acres when in fact it only contained seventeen acres, and it was ruled by the Court of Appeals that the purchaser was entitled to a credit on the price for the deficiency estimated at the contract price.

Now under the evidence in this case it is plain that plaintiffs stipulated for eighty acres and the defendant positively represented the quantity as eighty acres and it is clear that in the absence of any proof to the contrary it was favorable to the defendant to estimate the deficit at $7.50 an acre ,that being the value according to the contract price. Because, though the land was neither bought nor sold professedly by the acre, the presumption is that in fixing the price regard was had on both sides to the quantity which both supposed the estate consists of. [Hill v. Buckley, 17 Vesey 401.]

There is no evidence as to what the land would have been worth had it contained eighty acres as it was represented, and we see no ground for reversal because the court adopted this measure of compensation.

The contention that plaintiffs were bound to rescind *in toto* does not apply to a case like this. When this same proposition was urged in Waters v. Travis, 9 Johns. 459, Chancellor KENT answered: "The doctrine that a contract enforced specifically must be so in its entirety, appears to me solid; but where the right of one party is sustained, and the other can only shelter himself by the allegation that part of the property sought is not in his power, and so placed by his own act, from a complete compliance with it, the rule of equity as to the entirety must be strangely misapplied if it could possibly prevent the party injured by the alienation from saying, 'true it is, I am entitled to the whole, but under all the circumstances I am content to accept what is in the power of the defendant to give, and relinquish my right to the remainder.' " And on appeal in the same case, Judge SPENCER said: "It is against all my notions of justice to allow the appellant to excuse himself from performing so much of the contract

as he can yet perform, because he has seen fit wrong-
fully to abridge himself of the power of performing
the whole.   And I again recur to the observation, that
the converse of this proposition would not be just or
true.   The respondent might insist on having all the
land or none, or he may elect to consider the acts of the
appellant as his, and thus make valid what was wrong-
ful.   .   .   .   Where a vendee seeks a specific execution
of an agreement, there is, says Mr. Sugden (Sugden
Law on Vendors, 193), much greater reason for afford-
ing the aid of the court at the suit of the purchaser,
when he is desirous of taking the part to which a title
can be made.''  [Atty.-Gen. v. Gower, 9 Mod. 224; Mort-
lock v. Buller, 10 Vesey Jun. 315.]

In my opinion the bill stated a case for equitable
interposition, and the evidence abundantly supported
it and the decree should be affirmed.

*Sherwood, P. J.,* concurs in my views; *Burgess, J.,*
dissents and expresses his views in a separate opinion.

## In Banc.

The foregoing opinion of GANTT, J., in Division
Two, after a rehearing in Banc is adopted as the opin-
ion of the court.   *Sherwood, Robinson, Valliant, Mar-
shall* and *Brace, JJ.,* concurring therein; *Burgess, C.
J.,* dissents and expresses his views in a dissenting
opinion.

## Dissenting Opinion.

BURGESS, C. J.—This is an action for damages
for fraud in the sale by defendant Bell of a tract of
land to plaintiffs containing a less number of acres
than Bell represented it to contain, and to enjoin the
sale of the land conveyed under a deed of trust executed
by plaintiffs to defendant Jones as trustee for the ben-
efit of Bell to secure the payment of $215, being the
balance of the purchase money, $385 having been paid
in cash at the time of the sale, upon the ground that

the damages sustained amounted to more than the balance due on the property.

The petition alleges that in March, 1896, plaintiffs purchased from defendant Bell the following land in Benton county, Missouri: ''The south part of the northwest fractional quarter of section three in township forty of range twenty-three, lying in the following metes and bounds: commencing at the southeast corner of said quarter section and running on the half-mile line north to a point opposite the fence between James Neece and Adam J. Neece, and west with said fence to the slough, and down the slough to Grand river, and up Grand river to James Foster's land, and thence east to the place of beginning, containing eighty acres, more or less.'' That at the time of the purchase said defendant represented to plaintiffs that said tract contained not less than eighty acres. That plaintiffs were ignorant of the facts, and relying wholly on said representations, purchased said land for $600, paid $385 down, and gave a deed of trust on said land to defendant Jones as trustee to secure a note to Bell for the remaining $215, which deed of trust is dated March 16, 1896, and recorded at deed record 67, page 188. That said tract of land in fact contained only fifty acres. That Bell's representations as to such fact were false and fraudulent, and made for the purpose of deceiving plaintiffs. ''Wherefore, plaintiffs say they have paid full value for the land actually conveyed.'' The prayer is that the note secured by the deed of trust be cancelled, that the deed of trust be declared fully satisfied, and that defendants be enjoined from attempting to collect said note by sale under said deed of trust or otherwise.

The answer of defendant Bell admits the execution of the deed to the land as alleged in the petition, alleges that the deed of trust and note were given to secure part of the purchase price of the land described in the petition, but denies every other allegation in the petition. For further answer and counterclaim the answer alleges default in payment of the note secured by

the deed of trust, advertisement and sale by defendant Jones under the provisions thereof on July 3, 1897, at which sale defendant Bell became the purchaser for $250, and that a deed was executed to him by the trustee.   The answer concludes with the usual allegations of a petition in ejectment, and prays for the possession of said land.

The reply admits the trustee's sale and execution of deed as alleged in the answer, but denies all other allegations of new matter.

The judgment and finding by the court as to the sale of the land was as alleged in the petition and admitted in the answer; that plaintiff was wholly ignorant of the number of acres contained in said tract, but relied on defendant's representations that said tract contained eighty acres; that said representations were false and fraudulent, and that said tract contained only sixty-one acres.   The court also finds the amount of cash payment to be $385, and the execution of deed of trust securing $215 as alleged and admitted.   That the contract price was at the rate of $7.50 per acre, and that plaintiff has sustained damage in sum of $142.50, the price of nineteen acres of land at such rate.   That a sale,was made under said deed of trust by the trustee Jones as alleged and admitted.   It decreed that said deed of trust and trustee's deed be set aside and for naught held, and that defendant recover of plaintiff $72.50 of the unpaid purchase money of said land with eight per cent interest from March 16, 1896, and that the same be a lien on said land, and that each party pay the costs made by himself and not theretofore adjudged.

Motions for new trial and in arrest containing the usual grounds of objection were timely filed and overruled, and appeal perfected to this court by defendant Bell.

The following admissions were made in the pleadings, or by the parties during the trial:

"1.   The defendant Bell, on March 16, 1896, conveyed by warranty deed in usual form the land de-

scribed in the petition, to plaintiff W. T. McGhee, and in said deed described said land as containing eighty acres, more or less.'

"2. In the deed conveying said land to Bell, and in several deeds prior thereto said land is described as containing 50 acres, more or less, metes and bounds being the same as in deed from Bell to McGhee.

"3. Said land in fact contained 61 acres according to survey made by county surveyor.

"4.. Execution of deed of trust to secure balance of purchase money, default in payment, advertisement and sale, and execution of deed by Jones as trustee to Bell.

"5. That plaintiffs went into possession of land under deed from Bell, and were in possession at institution of this suit and to the date of trial.

"6. That plaintiffs discovered the deficiency of the land about June, 1896, before any material improvements had been made; that thereafter they remained in possession, improved the land, but made no complaint to Bell until pushed on the note for the remainder of purchase money."

Defendant knew the number of acres named in the deed under which he held title and possession of said land. The plaintiff William T. McGhee was an illiterate man, and could neither write nor read the writing of others. Defendant learned that he desired to purchase a tract of land containing not less than eighty acres, and in order to sell his land to plaintiffs, and as a special inducement thereto, the defendant represented to and told plaintiffs that his farm contained not less than eighty acres, and contained near ninety or a hundred acres, and pointed out to them the boundary lines of said tract and told them that certain fences were on said land, and were the property of defendant. Plaintiff had no knowledge of the number of acres contained in said tract, nor did he know the area or boundaries thereof, except as the same were pointed out to him by defendant; and relied wholly on the statement and representations of defendant as to the

number of acres in said tract, and the boundary lines thereof. And relying upon said statements, and believing the same to be true, and being deceived thereby, was induced to purchase, and did purchase of defendant the said land for the price and sum of $600, as and for a tract of eighty acres, paying $385 cash, and giving their note for $215, the balance of the purchase price, and secured the same by a deed of trust on said land, making defendant James R. Jones trustee therein. Plaintiffs afterwards, and before the institution of this suit, learned that they had received a deed to a tract much less than eighty acres in area, and aver that they relied wholly on defendant's representation and but for said representations they would not have purchased said land.

About March, 1897, the interest on the unpaid purchase price falling due, defendant Jones, as trustee, advertised said land for sale under said deed of trust, whereupon plaintiffs brought this suit to have set off damages for the fraud and deceit practiced by defendant in the sale of said land, and allege that they have already paid full value for the land actually conveyed, and ask that defendant who was still possessor of said note, be required to bring said note, and deed of trust into court, that the note be cancelled and for naught held; that the deed of trust be declared satisfied, and that defendants be enjoined from collecting said note by a sale under said deed of trust, or otherwise, and for such other relief as to the court might seem just and proper. Afterwards during the pendency of said suit, said land was advertised and sold by the defendant Jones herein, trustee in said deed of trust. Plaintiffs' attorney appeared and gave public notice of the pendency of this action (having first filed notice *lis pendens*) and at said sale said defendant Bell purchased said land. Defendant filed his answer, denying each and every allegation in plaintiffs' petition, and setting up his purchase at trustee's sale and his deed thereunder, and for judgment in ejectment.

It is said in the majority opinion that, "It is clear

upon equitable principles plaintiffs were not bound to rescind the whole contract and take back their purchase money and have their note and deed of trust cancelled,'' and Hill v. Buckley, 17 Vesey 395, is relied upon as sustaining that contention. But in that case the defendant sold to the plaintiff a tract of land containing two hundred and seventeen acres and ten perches—when in fact there was not that quantity by about twenty-six acres. The bill was for specific performance of the contract by the vendee, in so far as it was in defendant's power to convey, with an abatement out of the purchase money, in respect of a deficiency in quantity. *"Held*, that where a misrepresentation is made as to quantity, though innocently, the purchaser is entitled to have what the vendor can give, with an abatement out of the purchase money for so much as the quantity falls short of the representation.''

Graham v. Oliver, 3 Beavan 124, is another authority relied upon. That was also an action by the vendee for the specific performance of the sale of a tract of land who was willing to take a less quantity than he purchased, and it was held: ''Where a party has entered into a contract for the sale of more than he has, the purchaser, if he sees fit to accept that which it is in the power of the vendor to give, is entitled to a performance to that extent.'' The same doctrine is announced in Waters v. Travis, 9 Johnson's Rep. 464; Adams on Equity (8 Ed.), p. 91; Story's Eq., sec. 779; Morss v. Elmendorf, 11 Paige 288; and Erwin v. Myers, 46 Pa. St. 96; to the same effect is Townsend v. Vanderwerker, 160 U. S. 171. These authorities announce a familiar principle which no one disputes and which every lawyer concedes. But they are not in point in this case, for the reason, that this is *not* an action for specific performance of part of a contract for the sale of land, but is somewhat in the nature of an equitable set-off upon the ground of the false and fraudulent representations of Bell in regard to the quantity of the land, by reason of which plaintiffs claim they were damaged in excess of the contract price of

the land already conveyed to them by Bell, and ask that defendant be required to bring said note and deed of trust into court, that the note be cancelled and held for naught, that the deed of trust be declared fully satisfied, and that defendants be forever enjoined from collecting said note by sale under said deed of trust, or otherwise, and for such other relief as to the court may seem just and proper. There is not one word said in the petition with respect to specific performance of the contract, nor could such an action be maintained for the obvious reason, that plaintiffs had received from defendant Bell a good and sufficient deed for all the land which the tract that he sold to them contained, and although a less quantity than he contracted to sell them, plaintiffs retained said deed with full knowledge of that fact, and had it in their possession at the time of the institution of this suit. There was therefore nothing upon the part of Bell to perform.

It would be absurd to say that plaintiffs could accept and retain a deed which they knew was for a less number of acres than was in the tract which they purchased, and then sue the grantor for the specific performance of a contract to convey land which he had theretofore conveyed to them.

In Waterman on the Specific Performance of Contracts, sec. 516, it is said: "As a rule, when the plaintiff knew at the time of bringing his suit that the contract could not be specifically performed or decreed, the bill will not be sustained for compensation in damages. It is then reduced to the case of a bill filed for the sole purpose of assessing damages for a breach of contract, which is matter strictly of legal and not of equitable jurisdiction." [2 Beach on the Modern Law of Contracts, sec. 881.]

In the case of Kempshall v. Stone, 5 Johns. Ch. Rep. 193, the defendant, who had entered into articles of agreement with the plaintiff, for the sale and conveyance of a lot of land, after the time of performance had elapsed, sold and conveyed the land to a third person for a valuable consideration, without notice of the agree-

ment, and before the filing of a bill by the plaintiff for a specific performance of it. *Held,* that a specific performance could not be decreed; and that the plaintiff must seek his remedy at law for a compensation in damages for the breach of the agreement. The court said: "When the defendant had disabled himself before the filing of the bill, and the plaintiff *knew* of that fact before he commenced his suit (and I consider such knowledge a material circumstance in the case), it is then reduced to the case of a bill filed for the sole purpose of assessing damages for a breach of contract, which is a matter strictly of legal and not of equitable jurisdiction. The remedy is clear and perfect at law, by an action on the covenant; and if the court is to sustain such a bill, I do not see why it might not equally sustain one in every other case sounding in damages, and cognizable at law." [Hatch v. Cobb, 4 Johns. Ch. Rep. 559.] The same rule is announced in 2 Story on Equity Jurisprudence (3 Ed.), sec. 799.

In the case of McQueen v. Chouteau's Heirs, 20 Mo. 222, Judge Scott, in speaking for the court, said: "It was admitted on the hearing of this cause that, before this suit was brought, the defendants had conveyed away the land in controversy. They had offered previously to convey to McQueen, on his compliance with the terms of the contract. This he failed to do. In cases similar to this, courts of equity have refused to decree a specific performance of the contract, and have refused to entertain the bill for the purpose of compensating the complainant for damages, but have left him to his action at law on the agreement. In the case of Hatch v. Cobb, 4 Johns. Ch. Rep. 559, it is said that it is doubtful how far the court has jurisdiction to assess damages merely in such a case, in which the plaintiff was aware, when he filed his bill, that the contract could not be specifically performed or decreed, as it was a matter of legal cognizance; that although equity, in very special cases, may possibly sustain a bill for damages on a breach of contract, it is clearly not the ordinary

jurisdiction of the court. This doctrine is confirmed in the subsequent case of Kempshall v. Stone, 5 Johns. Ch. Rep. 193, in which it was held that a defendant, who had entered into an agreement with the plaintiff for the sale of a lot, and who, after the time of performance had elapsed, sold and conveyed the land to a third person for a valuable consideration, without notice of the agreement, and before the filing of a bill by the complainant for a specific performance of it, would not be compelled to a specific performance, but that the plaintiff's remedy was at law, for a compensation in damages for the breach of the agreement.''

In Bonner v. Little, 38 Ark. 397, it is said: ''Where there is a sale of lands, and a contract to convey the legal title, which, as to part, is impossible, the vendee may, if there be nothing else in the case to defeat his equity, elect to have performance, so far as the vendor may be able, and may apply to a court of equity to compel it; and the court taking jurisdiction for this purpose, will retain the cause for the incidental purpose of awarding compensation for the deficiency. This is given, however, more for the purpose of adjusting the equities between the parties, with regard to the subject-matter, already properly before the court, than as actual damages for non-performance. With regard to the latter they are more properly within the jurisdiction of courts of law, and courts of equity will not assume jurisdiction for the sole purpose of awarding damages for a breach of contract to convey, where it was known to the complainant, when the suit was brought, that a performance was impossible.''

The same doctrine is announced in Willard's Equity Jurisprudence, 290, and in fact by all of the authorities.

While it is true that where the vendor has contracted to convey a tract of land, the title to a part of which fails, the vendee may enforce specific performance of the residue of the land, with compensation in damages for the part the vendor is unable to convey, yet where he conveys to the vendee all of the land sold

to which he has title, as in this case, though less than the quantity sold, and the deed thereto is accepted by him, the vendee can not file a bill in equity, for the mere purpose of obtaining compensation in damages for fraud practiced upon him by the vendor in the sale of the land, but he must resort to his remedy at law for that purpose, where the case may be tried before a jury if either party so desires, of which right defendants are deprived if this judgment be permitted to stand, and in no authority cited in the opinion is it ruled otherwise.

There is no pretense that the note for the balance of the purchase money, or the deed of trust given by plaintiffs upon the land described in the deed from Bell to plaintiffs, to secure its payment, were obtained by fraud, or that Bell is insolvent, or that plaintiffs did not have an adequate remedy at law against him for damages, or that they desired to have the contract rescinded, nor do they offer to pay the balance of the purchase money should any part of it be found to be due to defendant, but all of these essential averments are taken for granted. They do not aver that the note and deed of trust were obtained from them by fraud, or that they did not know that they were signing such instruments, but aver that they have paid defendant Bell more than the value of the land, and for that reason alone ask that he be required to bring them into court and that they be cancelled, etc.

While there is no rule of law better established than that where a court of equity once acquires jurisdiction of a cause it will retain it to do full and complete justice between the parties (Holland v. Anderson, 38 Mo. 55; McDaniel v. Lee, 37 Mo. 204), there are no allegations in the petition in the case at bar which entitle plaintiffs to equitable relief of any kind.

The only thing complained of in the petition is the fraudulent conduct of Bell by which plaintiffs claim they were induced to buy the land.

But notwithstanding these facts, the court found that plaintiffs were indebted to defendant Bell in the

sum of seventy-two dollars and fifty cents balance due upon the land, and without anything in the pleadings which authorized it, set aside, and cancelled the deed of trust, and rendered judgment in Bell's favor against plaintiffs therefor, and made it a lien upon the land.

Where the purchaser of land receives and retains a deed thereto from his vendor for a less number of acres than he contracted for, with knowledge of that fact, as did the plaintiffs in this case, he can not resort to a court of equity for the sole purpose of recovering damages for fraudulent representations upon which he relied, made by the vendor with respect to the number of acres the tract contained, and was thereby induced to purchase the land, but must resort to a court of law. He has upon discovery of the fraud, the right to stand by the contract and sue his vendor for damages for the fraud practiced upon him, or to rescind the contract; but as a general rule the right to disaffirm a contract for fraud, must be exercised promptly, and the disaffirmance must be *in toto*. "A party can not affirm a contract in part, and repudiate it in part. He can not accept its benefits on the one hand, while he shirks its disadvantages on the other. He can not play fast and loose in the matter. Nor is he permitted to select his own time, consult his own convenience and watch the rise and fall of the market, before exercising the right of rescission. If he elects to disaffirm the contract in consequence of deception practiced upon him, such election in order to avail him must have the chief and essential element of promptitude, and he must put the other party in the same situation as he was before the contract was made. All the authorities speak this language." [Estes v. Reynolds, 75 Mo. 563; Jarrett v. Morton, 44 Mo. 275; Hart v. Handlin, 43 Mo. 171, and cases cited; Lewis v. Land Company, 124 Mo. 672.; Robinson v. Siple, 129 Mo. 208.] There seems to be an exception to the general rule, however, in case the property received by the party seeking to rescind has been changed in such a manner that it is impossible to have it restored, then a court of equity will afford re-

lief anyway. [Holland v. Anderson, 38 Mo. 55.] But that decision is placed on the express ground that the property had so changed that the parties could not be put *in statu quo,* and as a court of equity had taken jurisdiction of the action it was held that it would retain the cause and determine the whole matter in controversy. [Nelson v. Betts, 21 Mo. App. 219.]

In the case at bar, there was nothing in the way to the placing by plaintiffs of defendant Bell *in statu quo* before or at the time of the institution of this suit, which was a condition precedent to a rescission of the contract. But they do not seek to have the contract rescinded, but affirm it, and at the same time claim damages from Bell on account of the fraud practiced upon them, which they seek to recover, and have deducted from the balance due by them on the purchase money by way of recoupment, without offering to do equity on their part, or offering to perform the contract on their part.

Springfield Engine & Thresher Co. v. Donovan, 147 Mo. 622, was an action in ejectment in which plaintiff was entitled to no relief if not the possession of the land sued for, but the court rendered judgment in its favor against the defendant Dorice Donovan for $1,073.50; and decreed that the deed of trust given by him on the land to plaintiff to secure said indebtedness be foreclosed, that Donovan's right, title and interest in the land be sold for the payment of the debt. The court said: "If there is anything in the record upon which to predicate this judgment, or any theory upon which it can be permitted to stand, we are at a loss to know where it is or what it is. It is a judgment for which plaintiff does not ask or want, unauthorized by the pleadings in the case, and manifestly erroneous." So in the case at bar, defendant did not ask or want a money judgment against plaintiffs, nor was such a judgment authorized by his answer. It is axiomatic that no judgment can be maintained which is not authorized by the pleadings, and such is this case.

Defendant also contends that whatever representa-

tions, if any, Bell made with respect to the. number of acres in the tract of land, and its boundaries, were mere expressions of opinion and ought not to have been relied upon by plaintiffs, but the great weight of authority is that statements as to such matters, if made by a person positively as of his own knowledge, are statements of fact, and constitute fraud. [Hitchcock v. Baughan, 44 Mo. App. 42; Foster v. Kennedy's Adm'r., 38 Ala. 359; Beardsley v. Duntley, 69 N. Y. 577; Coon v. Atwell, 46 N. H. 510; Hill v. Brower, 76 N. C. 124; Griswold v. Gebbie, 126 Pa. St. 353; Clark v. Baird, 9 N. Y. 183.] And such affirmations are not to be regarded as mere expressions of opinion in which it was folly to confide; nor as representations, the truth of which the vendee might, with common prudence, ascertain. [Coon v. Atwell, 46 N. H. 510.] In Starkweather v. Benjamin, 32 Mich. 305, it is held, that "it is no defense to an action for fraud in misrepresenting the quantity of land in, a parcel the defendant was then selling the plaintiffs by the acre, that the. latter saw the land and was as able to judge of its size as the defendant; a positive assurance of the area of a parcel of land, made under such circumstances, is very material, and is equivalent to an assurance of measurement, and if it be false, and the vendee is deceived by it, he has a clear right of action for the fraud."

So that, it is clear if Bell made the statements to plaintiff with respect to the location and quantity of the land which they claim he did, and they were induced by reason thereof to buy it, that they were fraudulent and for which they can maintain an action at law against him.

For these considerations I dissent from the opinion, and think the judgment should be reversed.