[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 878 
The complainant, appellant here, filed his bill of complaint in the Circuit Court of Hillsborough County, wherein he alleged in substance that on October 8, 1925, the defendants E. Buzbee and Nellie Buzbee, being the owners in fee simple, conveyed to him by warranty deed, the following lands lying and being in Hillsborough County:
 "Beginning at a point one hundred (100) feet North of the south bank of Noonan Branch of the west line of the West One hundred and ten (110) yards of the Northeast quarter (NE 1/4) of the southeast quarter (SE 1/4) of Section Sixteen (16) Twp 31 S.R 19 E, thence running south to the southwest corner of said tract, thence east three hundred and thirty (330) feet, thence North to a point one hundred (100) feet north of the south bank of Noona Branch, thence west along the line of the branch to point of beginning, containing five (5) acres more or less,"
for which he paid in cash on or before the delivery of the deed, the sum of $1000.00; that at the time of the delivery of the deed he executed and delivered to the grantors two certain promissory notes, each in the sum of $875.00, maturing respectively one and two years after date and bearing interest at 8% per annum, secured by a mortgage upon the property; that upon information and belief, the title to the property or an interest therein at the time of the sale was held in trust by E. Buzbee for the defendant L. W. Buzbee; that as a part of the consideration *Page 879 
for the purchase of said land, the said Buzbees represented to him that the said land comprised 5 acres more or less and believing said representations to be true, he relied upon them and was thereby induced to purchase the said land with the understanding that he was paying $550.00 per acre; that he believed he was getting five acres; that he had no knowledge of the area or boundaries of the same; that he neither made, nor caused to be made, an independent investigation or survey, but was assured by the Buzbees that they would have a survey made by the county surveyor within ten days, or as soon as the surveyor could do the work which would show that the tract contained five acres, such assurance being reduced to writing, dated the same day as was the deed, a copy thereof being attached to, and made a part of, the bill of complaint; that defendants neglected or refused to have a survey made as agreed; that he, the complainant, was 77 years of age and that by reason of his infirmities he did not undertake to measure the land and that he, because of inexperience, was not capable of understanding the description by metes and bounds; that said representations were made for the purpose of deceiving and misleading complainant; that they were fraudulent and false and were known by the defendants to be so, or were made in disregard and indifference to their truthfulness. The bill shows further that complainant did not discover the alleged fraud until he had an independent survey made by the county surveyor or his assistant on June 17, 1927, which survey showed that he had obtained a deed to only 2.11 acres of land; that before discovering the fraud, he had paid the note first maturing and had also paid $140.00 accrued interest on the deferred payments. Complainant prayed that the mortgage be declared satisfied and for a *Page 880 
cancellation of the mortgage and notes, for an injunction, for an accounting and for general relief.
The answer of L. W. Buzbee admitted that the defendants E. Buzbee and Nellie Buzbee were the owners of the fee, the execution and delivery of the deed, the payment of the money and the giving of the notes and mortgage; but denied that he, at the time of the sale, had any interest in the land or that it was held in trust for him. He admitted that part of the payments were made to him but denied that he represented that the land contained five acres more or less or that it was sold for $550.00 per acre, and said that at the time of the execution of the deed he had no knowledge as to the exact area or boundaries of the land. The answer avers that he, the said L. W. Buzbee, had a survey made approximately 20 days after delivery of the deed and that he immediately thereafter pointed out to complainant the corners and boundaries and advised the complainant that he did not know the area of the said tract.
The answer of E. Buzbee in its allegations of fact corresponds with the answer of L. W. Buzbee.
The cause was heard upon bill, answers and testimony taken, and the court being satisfied that the equities were with the defendants, dismissed the cause at complainant's costs.
Without reviewing here the testimony, we will simply state that as we see it, the allegations of the bill that were not admitted by the defendants to be true were fully sustained by the evidence.
During the course of his testimony, the complainant stated:
 "Some two or three weeks after taking title to said lands and before I built my house and moved on the *Page 881 
place, I went back to see Mr. Buzbee. He said he had had the property surveyed and he showed me the southwest corner and also showed me about where the lines ran and said that there was about four (4) acres of land. I told him that I was not satisfied with that, as my agreement and deed called for five acres. He did not give me any map or plat drawn by his surveyor so that I could figure out just how much land there was on the tract. * * *
 "All along I kept trying to get Buzbee to find out by survey how much land there was in my tract but he would do nothing. Then I decided to have a survey made myself, which was done on June 17th, 1927, and this survey showed two and eleven hundredths (2.11) acres in the tract. I then tried to get Buzbee to give me enough to make five acres but he refused to do so. I was willing to take more land or adjust the matter by settlement by the acre on basis of five acres but he refused to do either."
The defendant, L. W. Buzbee, testified:
 "I never told him (Firstbrook) at any time that there were five acres in the tract. He bought the land on these representations. I did have a survey made a few days after the deal, as I agreed to do and the next time Mr. Firstbrook came I showed him where the lines lay and told him I thought there was about four (4) acres in the tract. Firstbrook objected to the discrepancy saying 'where is my five acres?' and also seemed to be dissatisfied because the land didn't lay right and I told him at that time that I had the money he paid on the first payment and that if he didn't want to go on through with the deal I would give him his money back."
The deed to the complainant describes the property as it is set out in the bill of complaint. Without the aid of a surveyor or a plat or drawing of the property conveyed, *Page 882 
giving courses and distances (and complainant did not have the benefit of either), it is quite apparent that one cannot, from the description contained in the deed determine by mathematical calculations the area of the tract. If complainant had been capable of forming an approximately correct opinion of the area after the corners and boundaries were shown to him, the corners and boundaries were not shown to him until after the deed was delivered and a survey made. Not knowing or having the means of knowing the location of the boundary lines or corners, the conclusion that complainant agreed to give the purchase price for the specific tract conveyed without regard to the acreage would be unreasonable. In the beginning of the negotiations, he only wanted a small lot, but defendants did not want to sell a small lot, but would sell five acres, and they actually conveyed to the complainant "five acres, more or less."
In agreeing to pay the price demanded, the complainant, in the absence of a description of the land sufficiently definite in itself to enable him to ascertain the area of the tract but with the assurance that there was "five acres more or less," was necessarily influenced by the representations as to the area, or so it seems to us.
In Phifer v. Steenburg, 66 Fla. 555, 561, 64 So. 265, 267, this Court said:
 "There is no doubt that as a general rule, in a sale of land in gross, that is where it is a specific lot, section or parcel of land sold as a whole without regard to specific quantity, the purchaser is not entitled, in the absence of fraud or gross mistake to an abatement of the purchase price for a deficiency in the quantity of land from that which the parties estimated at the time of sale, unless such a deduction is expressly stipulated for, or *Page 883 
the vendor has given a guaranty of the number of acres; and this rule applies even where the deficiency is a large one, unless it is so large as to raise an inference of fraud. This rule applies where the sale is for a gross sum and the contract, bond for title or deed describes the land merely by reference to a government survey by metes and bounds, or by name or number of section, parcel or lot. In such cases relief is denied on the ground that the purchaser gets the specific land which he contracted to buy, and must be deemed to have assumed the risk of a deficiency in quantity. If the sale is in fact one in gross, the purchaser is not entitled to an abatement in the absence of fraud. 39 Cyc. pp 1585 et seq. * * * *
 "The words 'more or less' thus used are generally limited to a reasonable deficiency because of small errors in surveys, and to variations in instruments, and should not be applied to relieve against a gross deficiency in the quantity of land, when as alleged in the bill the vendors' agent assured the purchaser that he well knew the lands, that they contained in the aggregate 3,500 acres, and that the vendors would make a good title to that many acres, accompanied with the further allegation that the vendee did not know the number of acres and had no notice of any deficiency, and relied entirely upon the assurance of vendors' agent." See also 2 Warvelle on Vendors (2d ed.) 1074 et seq.; 5 Thompson on Real Property, 401; McGhee v. Bell, 170 Mo. 121, 70 S.W. 493.
Misrepresentations having been made by the vendors as to the quantity of the land sold, the complainant is entitled to an abatement out of the purchase money of so much as the quantity falls short of the representations. McGee v. Bell, supra; Phifer v. Steenburg, supra; 27 C.J. 100. *Page 884 
The appellees in their brief say that the real question in the case, the question to be decided is: Has the complainant by his conduct and actions acquiesced in what he claims were fraudulent misrepresentations, or what amounted to that in law, and upon which he acted? The case is presented here by them as though the suit was one for the rescission of the contract and they invoke the rule that upon discovery of the grounds entitling one to a rescission, he must act with reasonable promptness to avoid the penalty of acquiescence.
While the complainant had the right to rescind the contract and ask that it be cancelled, he also had the right to affirm it and an affirmance of the contract or what amounted to it — the retention of the property received under it — was not a waiver of the right to recover damages for the fraud. 14 A. 
E. Ency. of Law, (2d ed.) 170; 13 C.J. 395; Williams v. McFadden, 23 Fla. 143, 1 So. 618, 11 Am. St. Rep. 345.
 "Mere delay in suing to recover damages for fraud, without more, will not constitute a waiver of the fraud, unless the delay is so great as to entitle the defrauding party to plead the statute of limitations," 14 A. E. Ency. of Law (2d Ed.) 171-2.
 "Laches or delay which might preclude the defrauded party from rescinding the contract induced by the fraud does not affect his right of action for damages, but he may bring his action of deceit at any time within the period fixed by the statute of limitations." 27 C.J. 26.
Now, the complainant did not, as we well know, sue at law for the fraud; but has brought his bill in equity for the cancellation of the mortgage and note and for an abatement of the purchase price. For the quantity of land he actually received he, at the time of filing his *Page 885 
bill, had paid an amount in excess of its proportionate purchase price, and in consequence thereof he is entitled to a cancellation of the mortgage and of the note given by him for the last instalment of the purchase price, as well as an abatement of the purchase price to the amount of his damage, and there is no reason why a court in equity cannot give him full relief. Phifer v. Steenburg, supra; McGee v. Bell, supra.
It follows that the decree of the lower court must be, and the same is hereby, reversed and the cause is remanded with directions that a decree be entered for the complainant in accordance with the views herein expressed.