298 So.2d 573 (1974)
Robert M. PLATT, Jr., and His Wife, Rebecca J. Platt, Appellants,
v.
B. W. DEESE and His Wife, Gladys B. Deese, Appellees.
No. U-80.
District Court of Appeal of Florida, First District.
August 20, 1974.
Rehearing Denied September 20, 1974.
*574 Ernest Sellers and Jerry M. Blair, Airth, Sellers & Lewis, Live Oak, for appellants.
Frank M. Gafford, Lake City, for appellees.
McCORD, Judge.
This is an appeal from a final judgment denying recovery to appellants, Robert M. Platt, Jr., and Rebecca J. Platt, in their suit against appellees, B.W. Deese and Gladys B. Deese. Appellants sought to recover damages for misrepresentations concerning two conveyances of land from appellees to appellants. The parties entered into a contract by which appellees agreed to sell and appellants to buy two contiguous parcels of land totaling 20 acres at $600 per acre. After the conveyances were made, appellants discovered the acreage totaled only 11.07 acres.
The sequence of events which culminated in this lawsuit began when appellee, B.W. Deese, gave Charles R. Locke, a realtor, an oral listing on a triangular shaped parcel of land located between U.S. 129 and State Road 252 in Suwannee County, Florida, in late 1969 or early 1970. Deese told Locke that the parcel contained 40 acres and that he wanted $600 per acre for the land in the parcel. He instructed Locke that he could sell it in 5, 10 or 20 acre tracts or the entire tract as a 40 so long as the price was $600 per acre. The only exception was that if Locke sold only one or two acres, the price was to be different. Locke only knew that the property was bounded on the North by State Road 252 and on the West by U.S. Highway 129; he was not informed of the location of the third boundary. The factual recitation which follows is supported by the testimony of Deese's agent, Charles Locke, and by appellants.
On February 7, 1970, appellants, then residents of Dade County, Florida, contacted Locke about the purchase of land in Suwannee County in response to his advertisement. Neither Robert M. Platt, Jr., nor his wife, Rebecca, had ever previously bought a parcel of land and did not know the dimensions of an acre. They had been interested in 10 acres which Locke had already sold when they reached him and Locke offered to show them 10 acres in *575 the property appellees had listed with him. He drove appellants to the property, driving down the two aforementioned highways and pointing out the two highway boundaries. He priced the land to them at $600 an acre.
They returned to Locke's office and appellants inquired of him as to the amount of down payment required to purchase 10 acres and Locke responded that appellees required $1,000 down. Appellants then agreed to purchase 10 acres of the land at a price of $600 per acre and Locke telephoned appellee, B.W. Deese, and the two of them arrived at a description they considered would convey 10 acres. While Locke was typing the contract, appellants expressed interest in purchasing 20 acres but indicated that they could not pay $2,000 down and asked Locke if other arrangements could be made. Locke again telephoned Deese and informed Deese that appellants were interested in 20 acres but could not make a $2,000 down payment. Deese orally agreed to Locke's proposal that appellants purchase 10 acres plus one acre of an adjoining 10 acres with a first refusal on the remaining nine acres. Appellant, Rebecca Platt, asked Locke to ask Deese if he would reduce the price per acre if they took 20 acres and Deese replied that the price would be the same for all of it, $600 per acre.
The Platts signed the contract prepared by Locke containing a recital of consideration of "$6,000-$600" and a legal description calling for "11 acres (10 acres plus one acre)." This contract was executed by all parties on February 7, 1970, and on February 14, 1970, appellees executed a warranty deed to appellants purporting to convey 11 acres of land.
On March 17, 1970, appellants drove up from Miami to work on the land. On their way through Live Oak they stopped at Locke's office and expressed interest in having the boundaries of their land pointed out to them. The following morning, Deese and Locke visited appellants who were camping near the intersection of U.S. Highway 129 and State Road 252. This was the first time appellants saw Deese and he told appellants that he had a buyer for the remaining nine acres and they would have to exercise their option if they wanted the land. At that time, he pointed out to appellants for the first time the boundaries of the land which they had purchased and he pointed out generally the location of the line which would provide the remaining nine acres. Later that day appellants executed a contract to purchase the remaining nine acres. The contract was prepared by Locke with a description provided by Deese and contained a recital of the consideration of $5,400 and a legal description calling for "nine acres subject to survey." On January 8, 1971, appellees executed a warranty deed purporting to convey the nine acres to appellants.
On June 11 and June 17, 1970, Deese had the land surveyed and a plat prepared but the survey was not given to appellants until the summer of the following year and they then discovered the shortage in the acreage. The survey showed that the descriptions prepared by Deese and his agent, Locke, and inserted in the February 7, 1970, contract and the February 14, 1970, deed conveyed 4.27 acres rather than 11 acres as represented. The survey further revealed that the description contained in the contract of March 17, 1970, in the deed of January 8, 1971, conveyed only 6.80 acres rather than nine acres. Of the 20 acres appellants were to receive from the conveyances, they only acquired 11.07 acres which left a deficiency of approximately 45%.
Appellee, B.W. Deese, in his testimony disputed the foregoing sequence of events to the extent that he stated he accompanied appellants and Locke to the property and pointed it out to them prior to execution of the first contract. His testimony is vague, is not corroborated and is positively contradicted by the testimony of his agent, *576 Locke, and both appellants. Deese said also that his agreement was to sell specific parcels of land rather than to sell acreage.
Appellants contend the sales were by the acre  $600 per acre for 20 acres. Appellees, on the other hand, contend that the sales were by the tract. The trial judge ruled there was a mutual mistake of all of the parties as to the quantity of land conveyed. The trial court in the final judgment found as follows:
"... that the contracts entered into on the 7th day of February and the 18th day of March, 1970, between the parties hereto were entered into by each of the parties upon the mistaken belief that the buyers were purchasing and the sellers were selling distinctly different quantities of land.
The court further finds from the testimony of plaintiff, Robert M. Platt, that he was told by Charles Locke, realtor representing the defendants Deese that Mr. Deese wished to sell the triangle of land covered by the contract of February 7th which was a parcel of land from the intersection of the highways up to the section line. The court finds from this testimony of plaintiffs Robert M. Platt that defendant B.W. Deese had in mind a specific parcel of land while plaintiffs were contemplating a specific number of acres.
The court further finds that the mistake as to quantity as opposed to linear feet or tract sale was carried over into the sale of March 18, 1970.
It is the further finding of the court that because of the above mentioned mistake in the mind of each of the parties as to the exact quantity of land being conveyed, that there was a fundamental failure of the meeting of the minds between the parties to such an extent that no agreement was ever reached as to either contract.
The court further finds that there is no evidence that the acts complained of were done in a fraudulent, willful or wanton manner and upon plaintiffs' announcement at a prior final hearing that Count II of the Complaint was abandoned."
The trial judge denied relief to appellants, thereby leaving the parties where he found them except that he assessed costs against the appellants. He made no specific findings of fact beyond those quoted above and stated that he made no ruling on whether or not appellants were entitled to recission based upon mutual mistake as such was not raised by the pleadings.
We have considered the evidence, briefs and arguments of counsel and find that the trial court was in error in concluding there was not a meeting of the minds and that B.W. Deese had in mind a sale by the tract. The evidence clearly shows that these were sales by the acre rather than by the tract.
In Worsham v. Pierce, Fla.App., 251 So.2d 896, this court said:
"A contract of sale by the acre has been defined as one wherein a specified quantity is material and of the essence. Under such a contract the purchaser does not take the risk of any deficiency and the vendor does not take the risk of any excess. A contract of sale by the tract or in gross, on the other hand, has been defined as one in which the existence of the exact quantity specified is not material nor of the essence, each party taking the risk of the actual quantity to vary to some extent from what he expects it to be."
In Coble v. Agnew, Fla.App.2d, 128 So.2d 158, the court although it determined from the evidence there that the sale was one in gross, stated as follows:
"A lengthy annotation on this entire question of whether a sale is in gross or *577 by the acre appears in 1 A.L.R.2d, page 1. The general discussion, appearing on page 26, Section 11 is as follows:
`Before taking up individually the various factors influencing the determination of whether a particular contract of sale is a sale in gross or by the tract, certain generalizations may be mentioned which have found their way into many cases and which, while not particularly enlightening on the question, make it at least abundantly clear that the proper solution depends on a judicious weighing of varying, frequently opposing, circumstances which may serve as an indication of whether or not it was the intention of the parties to make quantity the essence of the contract.
While the intention of the parties has been declared to be the ultimate basis for deciding whether a sale is one in gross or by the acre, the question whether the parties intended the sale to be one in gross or by the acre is not decided simply by whether the payment is made in a gross sum or at so much per acre or on the mere fact or mode of specifying the quantity of the land, but all the peculiar circumstances of each case, including the conduct of the parties, the date of the contract, the price, and the value, extent, and locality of the land, together with the language of the contract, must be taken into consideration. Because the ascertainment of the parties' intentions depends so largely upon the peculiar circumstances of each case, no great uniformity among the cases exists and no inflexible rule can be deduced therefrom.'
It should be noted that the determination of the question ultimately depends upon the weighing of varying and often opposing circumstances, and upon the peculiar circumstances of each case."
Appellees are experienced land dealers who, according to the official records of Suwannee County, Florida, have been involved in 598 land conveyances through June 5, 1973. On the other hand, appellants, as previously stated, had never before bought a parcel of land and did not know the dimensions of an acre. All of appellees' instructions to their real estate agent in listing the land and in pricing the land to appellants were that he was to sell it for $600 an acre, which is exactly what he purported to do. The manifest weight of the evidence is to the effect that the only specific boundaries appellants saw prior to the first transaction were the two highways that formed two sides of a triangle. As to the second transaction, Deese pointed out generally where the third line would run to make up the nine acres. Deese and his agent drew up land descriptions within the two highway boundaries that they considered would total the acreages to be conveyed. It is significant that in the second conveyance appellee inserted the words "subject to survey." It is apparent that there was to be an adjustment one way or the other depending upon whether or not his guess as to the description which would provide the desired acreage would actually amount to that acreage.
From the evidence, the conclusion is inescapable that the sales were by the acre. The only evidence to the contrary was the testimony of appellee, Deese, that they were sales by the tract. His testimony is totally inconsistent with the manifest weight of the evidence and particularly with the testimony of his own agent, Charles R. Locke.
But even if we should look upon the sales as sales in gross, appellants would be entitled to recover. In Phifer v. Steenburg, 66 Fla. 555, 64 So. 265, the Supreme Court recognized one's right to recover for deficiencies in sales by the tract when there is fraud or gross mistake. While the trial judge found no fraud, it is apparent from the record that there was gross mistake and gross misrepresentation and no intention by Deese at the time of sale to *578 charge more than $600 per acre for the land conveyed.
As to the right to relief and the type of relief available to one in appellant's position, we find the following in 55 Am.Jur. 615, Section 139:
"... where a party is aggrieved by a mistake as to a quantity of land sold or purchased, `mutual mistake' may not be the only theory upon which he may proceed. Under substantially identical circumstances, his cause of action may be predicated upon a theory of breach of contract, such as breach of covenant, or breach of warranty, express or implied, or upon the theory that so far as the estimated quantity of land falls short of the vendor's representations, there is a failure of consideration, or upon a tort theory, such as fraudulent or innocent misrepresentation on the part of the vendor. Even though a deed has been accepted, relief may be granted by way of diminution or in refund of the purchase price in case of a gross or material mistake as to the quantity or acreage. In some jurisdictions relief may be had not only in a court of equity, but also in a court of law, at the election of the injured party." (Emphasis supplied)
Florida recognizes the right of the vendee to such an election in cases of gross misrepresentation. See Firstbrook v. Buzbee, 101 Fla. 876, 132 So. 673 and Perkins v. Simmons, 153 Fla. 595, 15 So.2d 289. In Firstbrook the Supreme Court stated:
"Misrepresentations having made by the vendors as to the quantity of the land sold, the complainant is entitled to an abatement out of the purchase money of so much as the quantity falls short of the representations. McGhee v. Bell, [170 Mo. 121, 70 S.W. 493] supra; Phifer v. Steenburg, supra; 27 C.J. 100."
* * * * * *
"While the complainant had the right to rescind the contract and ask that it be cancelled, he also had the right to affirm it, and an affirmance of the contract, or what amounted to it  the retention of the property received under it  was not a waiver of the right to recover damages for the fraud. 14 A. & E. Ency. of Law (2d Ed.) 170; 13 C.J. 395; Williams v. McFadden, 23 Fla. 143, 1 So. 618, 11 Am.St.Rep. 345."
* * * * * *
"Now, the complainant did not, as we well know, sue at law for the fraud; but has brought his bill in equity for the cancellation of the mortgage and note and for an abatement of the purchase price. For the quantity of land he actually received, he at the time of filing his bill had paid an amount in excess of its proportionate purchase price, and in consequence thereof he is entitled to a cancellation of the mortgage and of the note given by him for the last installment of the purchase price, as well as an abatement of the purchase price to the amount of his damage, and there is no reason why a court of equity cannot give him full relief." (Emphasis supplied)
In Firstbrook the court of equity allowed an abatement of the purchase price to the amount of the damage of the purchaser.
In Phifer v. Steenburg, supra, the Supreme Court stated as follows:
"In the instant case the contract of sale describes the lands by the government designation, and states that the quantity of land contracted to be sold was 3,500 acres, more or less. The words `more or less' thus used are generally limited to a reasonable deficiency because of small errors in surveys and to variations in instruments, and should not be applied to relieve against a gross deficiency in the quantity of land, when, as alleged in the bill, the vendors' agent assured the purchaser that he well knew the lands, that they contained in the aggregate 3,500 acres, and that the vendors would make a good title to that many acres, accompanied with the further allegation that the *579 vendee did not know the number of acres, and had no notice of any deficiency, and relied entirely upon the assurance of vendors' agent. The demurrer admits these allegations. It seems to us that under the circumstances a deficiency of 540 acres in a total of 3,500 is a gross deficiency, which entitles the vendee to an abatement from the purchase price upon the basis of an acreage valuation."
In the case sub judice the deficiency is proportionately much greater than was the deficiency in Phifer. Appellants seek recovery for their loss, and they cannot be put back in status quo by merely setting aside the conveyance. They have moved onto the property, made it their home and made improvements. Under the evidence here presented, they are entitled to recover for the gross deficiency in acreage.
Reversed and remanded with directions to enter judgment in favor of appellants and against appellees in the amount of $5,385.00 (the amount of appellants' overpayment) plus interest on said sum at the statutory rate (6%) from February 7, 1970, plus costs.
RAWLS, C.J., and JOHNSON, J., concur.