933 So.2d 1206 (2006)
David W. RAWSON and Patricia S. Rawson, Appellants,
v.
UMLIC VP, L.L.C., Appellee.
No. 1D05-4482.
District Court of Appeal of Florida, First District.
July 3, 2006.
*1207 Scott A. Remington and Gayle H. Cramer of Clark, Partington, Hart, Larry, Bond & Stackhouse, Pensacola, for Appellants.
Robert O. Beasley of Litvak, Beasley & Wilson, LLP, Pensacola, for Appellee.
ERVIN, J.
David W. Rawson and Patricia S. Rawson appeal from a final judgment denying them rescission of certain real estate contracts. They contend (1) that the lower court erred in refusing to grant the parties' joint motion for new trial and for disqualification of the trial judge by reason of its failure to render final judgment for a period of 18 months following trial, which impaired the court's ability as a fact-finder, and (2) that the lower court erred in concluding that the Rawsons were not entitled to rescission of the real estate contract, because, contrary to the lower court's finding, the parties' mutual mistake was material to the transaction, in that the undisputed evidence disclosed that UMLIC's failure of title affected 23.5 percent of the property it conveyed to the Rawsons. Because we conclude the parties' contractual agreements for the sale of the real estate allocated the risk of their mutual mistake as to the boundaries of the property to the Rawsons, we affirm the final judgment.
*1208 The facts preceding the conveyance of the disputed property reveal that the Rawsons' predecessors in title, John and Rebecca Neal, received a deed for nine parcels of real property in Escambia County, Florida, in 1995. A year thereafter, they obtained from the grantor a corrected warranty deed which added a 300-foot-wide strip of land, comprising 18 acres, to the property purchased, which had been omitted from their original deed. Thereafter, the Neals executed a mortgage on the property, which, in 2001, went into foreclosure, resulting in the mortgagee's assignee, appellee, UMLIC, VP, L.L.C., receiving a certificate of title to the property. The legal description attached to the mortgages and certificate of title, however, matched that in the original warranty deed, rather than in the corrected deed, excluding the 18-acre strip. In 2002, UMLIC offered the property, listing 14 separate parcels for sale by auction. The auction brochure described parcels three and five as including the 300-foot strip on their western boundaries, which the court below found UMLIC was unaware it did not own; moreover, UMLIC did not prepare a survey, other than a "site sale survey," which was not a legal survey. The site survey, labeled "VISUAL AID ONLY," also represented parcels three and five as including the additional 300-foot strip on their western boundaries and referred as well to the erroneous legal descriptions.
Appellants David and Patricia Rawson separately bid and purchased parcels three, four and five, believing they were all contiguous and that they contained a total of 76.5 acres. See diagram attached as Appendix. The Rawsons executed sales contracts for the three parcels and received a general warranty deed, containing the incorrect legal descriptions for parcels three and five. After the purchase of the property, a survey was prepared and the omitted strip of property was discovered, leading the Rawsons to seek rescission of the sales contracts and damages.
Trial was held on February 10, 2004. On August 5, 2005, the parties filed a joint motion for new trial and for disqualification of the judge, alleging that they believed the court's delay in rendering final judgment had been unreasonable, which would affect the court's ability to recall testimony introduced at trial. Additionally, they alleged that, under the circumstances, they did not believe the trial court could render a fair and impartial decision, because, if the case were retried before the same judge, an appearance of potential prejudice would arise due to his prior delay in rendering judgment. The lower court denied the motion for disqualification, finding that it did not state a legally sufficient reason for disqualification. It also denied the motion for new trial, concluding there was no need for another hearing, because the record contained sufficient evidence to enable it to enter a correct judgment. The court thereupon entered final judgment for UMLIC, rejecting the Rawsons' claims for rescission and breach of contract, concluding that, although the parties were both mistaken as to the amount of acreage to be conveyed, the breach of the contractual terms was not material because the Rawsons did not obtain legal descriptions or surveys of the parcels before making their bid, and, in any event, the contract assigned the risk of mistake to the Rawsons.[1]
*1209 Turning first to the Rawsons' contention that the lower court erred in denying their motion for disqualification, we agree the motion was correctly denied because it was legally insufficient. Florida Rule of Judicial Administration 2.160(d) permits disqualification based only upon a fear that a party will not receive a fair trial because of "prejudice or bias of the judge," or because the judge has an interest in the case. None of the cases appellants rely upon involve disqualification of a trial judge on the basis of a delay in issuing a ruling.
As for the trial court's denial of the parties' motion for new trial, we initially agree with appellants that an 18-month delay between the time of trial and a court's ruling is unreasonable. See Fla. R. Jud. Admin. 2.050(f) (requiring judges to rule on matters submitted to them "within a reasonable time"). We also agree that the final judgment contains factual inaccuracies, i.e., the findings therein that the evidence disclosed "the property was not auctioned by legal description," and "no legal description of the parcels [was] provided prior to bid." As appellants point out, UMLIC had prepared a Visual Aid of the property offered for sale, which was prominently displayed at the time of the auction, containing a diagram of the properties which showed parcels three, four and five as contiguous, and provided a legal description for all of the parcels.[2] Moreover, UMLIC distributed a sales pamphlet that included a drawing of the 14 parcels, and depicted parcels three, four and five as contiguously situated, which Dr. Rawson examined before bidding. Finally, paragraph 13 of the sales contract explicitly recited that a legal description for each parcel had been furnished.
Despite the inaccurate findings, we conclude they had no substantial effect on the judgment entered. The lower court otherwise found that the drawings of parcels three, four and five, which were based on the incorrect legal descriptions, depicted the parcels as "adjacent to one another." It further found that even if erroneous legal descriptions were not provided to the Rawsons, the deeds contained the incorrect descriptions and became part of the contracts for sale, thereby indicating the lower court concluded the purchasers were furnished the descriptions before the completion of the sale. As recognized in Ascontec Consulting, Inc. v. Young, 714 So.2d 585, 587 (Fla. 3d DCA 1998), reversal due to a delay between an evidentiary hearing and the entry of a written order "typically involves a combination of delay plus an indication that something is seriously amiss on the merits." Accord Reis v. Reis, 739 So.2d 704 (Fla. 3d DCA 1999). Under the circumstances, we are unable to conclude that the factual inconsistencies in the final judgment reflected a judicial misunderstanding that met the Ascontec standard.
The lower court also concluded that the mistake as to the quantity of the property conveyed was not material to the contracts entered into between the parties. We find no factual support for such determination. In this regard, section 152 of the Restatement (Second) of Contracts (1979), provides in part:
(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk *1210 of the mistake under the rule stated in § 154.
We consider the record clear that the basic assumption on which the contract was made was that all three parcels would be contiguous for the purpose of carrying out the Rawsons' intended use. Dr. Rawson testified that he intended to fence the property for horses, build a pond and have wildlife habitats in the wetland portions of the property. Instead, as a result of the erroneous legal description, the Rawsons have title to two separate, divided pieces of property, with separate access routes.
Despite the lower court's factual inaccuracies and erroneous legal conclusions, we decide reversal is not required because the court otherwise reached the correct legal result. The court's alternative determination that the contract allocated to the Rawsons the risk of the parties' mutual mistake is supported by the record. As a consequence, we agree that the lower court did not abuse its discretion in denying rescission of the contracts, which is the standard applicable to the review of an order deciding the equitable remedy of rescission. See Pendleton v. Witcoski, 836 So.2d 1025 (Fla. 1st DCA 2002).
To obtain such relief, a plaintiff must not only prove mutual mistake regarding a basic assumption underlying the contract, but must also establish "that the contract did not put the risk of mistake on the party seeking rescission." 27 Richard A. Lord, Williston On Contracts, § 70:69, at 415 (2003). Accord 13 Am.Jur.2d Cancellation of Instruments §§ 27, 29 (2006). As earlier stated, a mutual mistake affecting the basic assumption on which the contract was made may require a voidance of the contract unless the adversely affected party bears the risk of the mistake. In this regard, section 154 of the Restatement provides:
A party bears the risk of a mistake when
a) the risk is allocated to him by agreement of the parties or
b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.
(Emphasis added.)
In discussing the effect of section 154, Professor Lord makes the following pertinent comments:
A broadly[ ] worded provision[ ] in a contract that shifts the risk of a mutual mistake may be quite effective; even though a contract provision does not specify the particular kind of risk contemplated, the risk still can shift. Such a broad clause may prevent later attempts at rescission and may simply indicate that the buyer accepts the risk of loss that might arise from any material mistake as to the condition of the property sold.
Williston on Contracts, § 70:79, at 441 (footnotes omitted). Moreover, an "as-is" clause in the contract stating that the sale is made "as-is, where-is and with all its faults" assigns the risk to the buyer, as do disclaimers of any warranty or guarantee concerning the property. Id. § 70:80, at 448. Finally, Professor Lord concludes by noting: "An underlying basis of most contracts. . . is that the buyer has had ample time to consider the consequences and a full opportunity to engage in due diligence as to the property being offered for sale. . . . The mistake of risk can be placed foursquare on the shoulders of a party who has had the opportunity to conduct the necessary due diligence, but has failed to do so." Id. at 457.
A review of the pertinent terms of the auction real estate sales contract discloses that the risk of the mistake was *1211 clearly placed on the Rawsons. The auction brochure, as the trial court pointed out in its final judgment, contained an express disclaimer that the dimensions and acreage of the parcels were believed to be correct, but that it was the purchasers' responsibility to confirm the calculations. Moreover, paragraph 8(c) of the sales contract explicitly warned the purchasers not to rely on any of the seller's representations without verifying them, and the Rawsons, as purchasers, acknowledged it was their responsibility to make such inquiries and investigations as deemed necessary or appropriate in regard to title of the property.[3] The Rawsons additionally admitted in the contracts that they were purchasing the property "in an `as is, where is' condition `with all faults,'" and had executed the contract based solely on their own investigations and findings, and not in reliance on any information provided by the seller, the broker or the auction company. Indeed, they further agreed they had not relied upon any information, maps or sketches, statements or other representations made by or on behalf of the seller or the auction company. Notwithstanding the Rawsons' acknowledgments, they proceeded to the subsequent closing without first ordering a survey of the property or obtaining a title search to determine the acreage or a correct legal description, despite being advised by the contracts that if a defect in the title was disclosed which the seller was unable to cure, the purchasers could, at their option, terminate the contracts without liability, and the seller would refund their deposit.
The Rawsons nonetheless contend that their admissions were superseded by other provisions in the contracts requiring UMLIC to convey fee simple title to them by general warranty deed, which contained the same defective legal description as that in the Visual Aid displayed at the auction. They rely on Star Apartment, Inc. v. Martin, 204 F.2d 829, 830 (5th Cir.1953), and Sutton v. Cast-Crete Corp. of Florida, 197 So.2d 556 (Fla. 2d DCA 1967), for the rule that if a seller contracts to convey title to the property specified in a contract of sale, which it is impossible for the seller to do, the buyer has no duty to search the public records to determine whether the seller could perform its obligation.
Although the facts in the above cases are distinguishable from those at bar, because neither involved the construction of contractual language which allocated the risk of a mutual mistake to the purchasers, appellants cite an unpublished opinion in their notice of supplemental authority which does, Wilkey v. Rhea County, No. E1999-00307-COA-R3-CV, 2000 WL 782011 (Tenn.Ct.App. June 20, 2000). In Wilkey, the Tennessee Court of Appeals reversed the judgment of the trial court which refused to order rescission of a real estate sales contract that mistakenly described the property as a 10.5-acre tract of land, but which, in fact, as a resulting survey revealed, contained only 7.9 acres. *1212 In rejecting the seller's contention that an "as-is" clause in the agreement was a defense to the buyers' claim of mutual mistake, the court concluded that such clauses only apply to defects in the condition of property that were unknown at the time the contract was executed, but they have no such effect in allocating the risk of mistake as to the ownership of the tract.[4] The only authority the court cited, however, involved an "as-is" clause that expressly limited its scope to "the condition of the premises." Atkins v. Kirkpatrick, 823 S.W.2d 547, 553 (Tenn.Ct.App.1991).[5] In contrast, the Rawsons agreed to purchase the property as is, "specifically and expressly without any warranties, representations or guarantees, either express or implied, of any kind, nature, or type whatsoever, from or on behalf of the seller."
Under the circumstances, we do not consider the holding in Wilkey persuasive as to the proper outcome of the present appeal. As previously recited, the real estate sales contract in the case at bar placed the purchasers on notice that not only were they purchasing the property in an "as-is" condition, but that it was their responsibility to make such other investigations as they deemed necessary and they were not relying upon any "guarantee or warranty . . . that may have been given. . . by . . . the seller or the Auction Company." This distinguishing language in the sales agreement reveals that the Rawsons agreed, by not making further inquiries, to waive any objection they might have as to a defect in the condition of the property conveyed, and to relinquish any challenge that might develop relating to a defect in title.
The facts in SMB Partners, Ltd. v. Osloub, 4 S.W.3d 368 (Tex.Ct.App.1999), highlight this distinction. There, a purchaser of real property brought an action for damages against the seller, alleging that the vendor committed statutory fraud in misrepresenting the size, shape and location of an easement on the property sold. The seller defended, contending that an "as-is" clause in the parties' earnest-money contract precluded the buyer from relying on any oral misrepresentations by the seller as to the size of the easement. In rejecting this argument and affirming the judgment for the purchaser, the court noted that the provision in the contract expressly stated that the seller was conveying the property as is, without any representations or warranties, "except for the warranty of title contained in the deed." As stated, the sales agreement at bar made no reservations as to the warranties.
Because the parties' real estate contracts clearly and unambiguously allocated the risk of loss to the purchasers, the lower court's final judgment denying rescission is
AFFIRMED.
KAHN, C.J., and VAN NORTWICK, J., concur.

*1213 APPENDIX

NOTES
[1] In refusing to order rescission, the court also determined that the Rawsons had an adequate remedy at law for breach of warranty by reason of the warranties conveyed to them by the deeds.

In determining the measure of damages resulting from the breach, the courts recognize a distinction between contracts calling for the sale of real property in gross or by acre. See Platt v. Deese, 298 So.2d 573 (Fla. 1st DCA 1974); Measure and Elements of Damages Recoverable from Vendor Where There Has Been Mistake as to Amount of Land Conveyed, 94 A.L.R.3d 1091 (1979).
[2] At trial, however, David Rawson never actually testified he had seen the Visual Aid.
[3] Paragraph 8(c) states in its entirety:

Purchaser acknowledges that it is Purchaser's responsibility to make such legal, factual and other inquiries and investigations as Purchaser deems necessary, desirable or appropriate with respect to the Property. Purchaser(s) acknowledge(s) that they have executed this contract based solely on their own independent due diligence investigations and findings, and not in reliance on any information provided by SELLER, BROKER, AUCTION COMPANY or their affiliates, agents, officers, employees or representatives. Purchaser acknowledges that Purchaser has not relied, and is not relying, upon any information, document, sales brochures or other literature, maps or sketches, projection, pro forma, statement, representation, guarantee or warranty (whether express or implied, oral or written, material or immaterial) that may have been given by or made by or on behalf of the Seller or the Auction Company.
[4] We note that this observation is consistent with the definition of the term. See BLACK'S LAW DICTIONARY 121-22 (8th ed. 2004).
[5] In Atkins, the Tennessee Appellate Court affirmed the trial court's judgment refusing to order rescission of the contract because of an "as-is" clause, despite the fact that the condition of the property, subterranean ground water, discovered after the execution of the contract, made the property unsuitable for the planned construction of a residence.